Rapczynski et ux. *v.* W. T. Cowan, Inc., Appellant.

Argued October 11, 1939.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Langdon W. Harris, Jr.,* of *Herman & Harris,* for appellant.

*Harold B. Bornemann,* with him *William A. Gray,* for appellees.

OPINION BY PARKER, J., January 30, 1940:

This action in trespass was brought by parents for the death of their minor son. After verdict for the plaintiffs, a refusal of defendant's motion for judgment n. o. v., and entry of judgment, the defendant took this appeal, claiming that judgment should have been entered in its favor as a matter of law.

The defendant is engaged in trucking and operates a freight terminal and private garage at the southwest corner of Lehigh Avenue and Edgmont Street in Philadelphia. The width between curbs of Lehigh Avenue is 66 feet and of Edgmont Street 27 feet. Defendant's business is so extensive and its operations are such that it is necessary at times to park on the street its tractors, trailers, and tractors and trailers connected. On January 13, 1938, one of these tractors with trailer arrived at the terminal when the two were disconnected. The trailer was placed inside the garage and the tractor was parked close to the curb in the usual manner on the south side of Lehigh Avenue facing east toward Edgmont Street. A relay driver was then summoned to take the tractor and trailer through to Baltimore. The tractor furnished the motive power and had on it a cab and driver's seat but it had no storage capacity for freight, such being provided by the trailer. When connected the tractor and trailer formed one distinct carrying unit which was similar in construction to trucks which are seen every day on the public highways.

After the tractor had been standing on the street for about an hour and before the driver arrived, some children living in the neighborhood came to the intersection of these streets and began to play. A boy, Anthony Kasianczuk, then thirteen years of age, boarded the tractor, started it, and drove across the street where it was stopped. When Anthony stopped the tractor he saw the plaintiff's son John, then ten years of age, badly injured, lying on the street near where it had been parked. It appeared from other testi-

mony that the younger boy had jumped on the running board when the tractor started and that the starting of the car had caused the door of the cab to open and dislodge him so that he fell under the wheels. He died within three or four days as a result of these injuries.

The plaintiffs charge, as a main basis of recovery, that defendant's employee was negligent in that when he parked the tractor he did not remove the key from the ignition lock, and claim that the question of negligence is to be weighed in the light of the fact that boys were habitually permitted to play around and on the tractors and trailers of defendant while on the street and that this tractor was so attractive to children as to increase the measure of responsibility resting on the defendant. In short, plaintiffs rely on two classes of cases, "playground" and "attractive nuisance" cases, where comparable questions have arisen. It will be necessary to refer to additional testimony before we can determine whether the principles of those cases are applicable.

In one of the "turntable" cases, *Thompson v. B. & O. R. R. Co.*, 218 Pa. 444, 449, 67 A. 768, the court, after calling attention to the well-settled rule that the owner of real estate is not liable to a trespasser for ordinary negligence, then said: "The fact that the person injured was a child makes no difference unless there was negligence. The plaintiff's youth relieves him of the charge of contributory negligence but it does not give rise to an imputation of negligence on the part of the defendant......It owed him the duty not to injure him intentionally [wilfully or wantonly] but it was under no duty actively to take care of him either by keeping him out of the yard or by protecting him after he had entered it from his own acts or the acts of others who, like him, had entered without permission." The opinion, however, recognizes the fact that the owner cannot treat a child as a trespasser where he *invites* or *allures* such child to come upon the premises. There are a host of cases cited in appellant's brief to the same effect.

Our appellate courts have likewise held that a child may be a trespasser upon personal property as well as upon land and that ordinarily the responsibility of the owner is limited to the requirement that he shall not wilfully, wantonly, or intentionally injure such minor: *McGinnis v. Peoples Bros.*, 249 Pa. 335, 94 A. 925, where a boy got on a wagon without permission; *Perrin v. Glassport Lumber Co.*, 276 Pa. 8, 119 A. 719; *Roscovich v. Parkway Baking Co.*, 107 Pa. Superior Ct. 493, 163 A. 915, where a child was on a truck when injured. There was no evidence of wilful or wanton conduct on the part of the defendant. If an owner knowingly permits children to make a playground of his premises or play upon his property to such an extent that it evidences an approval of such action, it cannot be said that such child is a trespasser and consequently the general rule as to trespassers is not applicable and the owner is responsible for ordinary negligence.

Are the principles of the playground cases applicable to the admitted facts found here? The evidence disclosed that a number of boys lived in the neighborhood where defendant's premises were located and that they played cards, crap, and variations of a game of "tag" on the street at the corner in question and within two blocks of that location although there were two public playgrounds within a few blocks of that corner. It was also shown that in playing the game of "tag" the boys at times got on the tractors and trailers of the defendant. The testimony, however, will not support the claim that the defendant acquiesced in trespasses upon its premises or property by the boys in their play: *Wright v. Penna. R. R. Co.*, 314 Pa. 222, 171 A. 593. One of the plaintiffs' witnesses testified that the children were "always chased away from the trucks and warned not to play around them"; others that the police also chased them away. The police themselves, called by defendant, testified to frequent requests from the defendant to disperse the crowds of boys and to their efforts to break

up the practice. The mere negative testimony of other witnesses that they did not observe any effort to disperse the boys was not sufficient to overcome the positive testimony. One witness did state that some boys played around the trucks when an employee of the defendant could have seen them and that he did not drive them away. In the light of all the testimony coming from plaintiffs themselves there is not sufficient evidence in the record to support a finding that the defendant assented to any trespasses by boys on its trucks. The practice with reference to playing on the streets was just such as will be found in any locality where healthy children full of spirit reside. Viewing the evidence in a light favorable to plaintiffs, the most that can be said is that the defendant knew that children had frequently played their games in the vicinity just as they do in hundreds of places in Philadelphia and other cities and at times went upon tractors and trailers, notwithstanding the remonstrance of defendant. This was not a public playground as that term is used in cases of this character for defendant did not invite the children to make such use of its premises or property nor acquiesce in trespasses upon its tractors or in the use which the boys made of the streets in that vicinity. See definition of a playground by the former Chief Justice in *Fitzpatrick v. Penfield,* 267 Pa. 564, 572, 109 A. 653.

Following the Thompson case, it would appear that defendant owed this boy the duty not to injure him intentionally, wilfully, or wantonly, but the street intersection was not such a playground as placed on defendant the active duty to take care of him by keeping him off of the cars or by protecting him when he entered the tractor without permission, and there cannot be negligence unless there is a breach of duty. But the plaintiffs say that even though this was not a playground in the strict sense of that term children did, as a fact, play there to the knowledge of defendant, and that such practice is to be taken into account in connection with

the attractive nature of the truck in measuring defendant's duty and then determining whether defendant was negligent.

While *Thompson v. B. & O. R. R. Co.*, supra, accurately states the common law doctrine with relation to adult and minor trespassers, the rigor of the common law has been abated to a certain extent in this and other jurisdictions. In practically all courts there is exhibited a tendency to throw additional safeguards around minors of tender years by increasing the responsibility of owners of land and other property. The extent of departure shows much variation in the different states and the results reached and the reasons given in support of the doctrine vary: 37 A. L. R., note p. 34. Whatever may be the precise form produced by the change it is now generally referred to as the "attractive nuisance" doctrine, a term described by Chief Justice Schaffer in *Dolena v. Pittsburgh Terminal C. Co.*, 324 Pa. 228, 230, 188 A. 112, as a "distorted term." Justification for the principle is usually based on the theory that the setting up of a situation or object attractive to minors of tender years is an implied invitation to enter. Certainly the doctrine has as its motivating force sentiment rather than pure reason. However, admitting all this, it must contain some vital and sound force or it would not have made the headway it has. Those courts which have gone the longest distance describe their rule as the humane rule and at the same time refer to the less radical rule as the hard, or Draconian, rule. Much as any court dislikes being accused of lack of humanity, there is a clear duty to avoid being carried away by sentiment. While the courts and legislatures have shown a decided tendency to give additional safeguards to minors of tender years, the responsibility for their care is placed by nature upon their parents. The parents should not be permitted to shift indiscriminately the responsibility to the shoulders of strangers and at the same time penalize strangers for results

which are in a large measure due to their own disregard for the welfare of their children. To invoke the doctrine the element of allurement must be present.

We have found no better statement of the rule as it should be and as we understand it to be in Pennsylvania than as given by Mr. Justice HOLMES in *United Zinc & Chemical Co. v. Britt*, 258 U. S. 268, 275, 42 S. Ct. 299, 36 A. L. R. 28: "Infants have no greater right to go upon other people's land than adults, and the mere fact that they are infants imposes no duty upon landowners to expect them and to prepare for their safety. On the other hand the duty of one who invites another upon his land not to lead him into a trap is well settled, and while it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult. *But the principle if accepted must be very cautiously applied.*" (Italics supplied).

The "attractive nuisance" doctrine can be carried to such an extent that every owner will be made an insurer against injury caused to a minor by any property, real or personal, that the owner may possess. Scarcely an object can be named that does not have some attraction for a child and the younger the child the more varied are his inclinations and the objects which appeal to him. To hold that every object that attracts the fancy of any minor under fourteen years of age and is a source of danger to him is an attractive nuisance would certainly not be applying the principle with caution. Before we may label a situation or object as the equivalent of an invitation or an allurement, consideration should be given to its character, whether it is natural and common or artificial and uncommon. As to dangers that are natural in their origin and commonly encountered, it is the duty of parents to guard and warn

their children and the responsibility for failure to act is on them. On the other hand, a danger specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded against or made safe, calls for care upon the part of the owner.

Among the most common objects that meet the eye of every child in our Commonwealth are automobiles and trucks. They are neither uncommon nor novel for we see them on every hand. If we are to treat a truck as an attractive nuisance then there is no limit to this doctrine. Automobiles are seen by the hundreds and almost every family in this country has one; even the small retailer has his truck. We cannot hold that the mere object, a truck or an automobile, as such, comes within the classification; neither did the situation or condition of this truck constitute an attractive nuisance. It was parked at the curb just as myriads of cars are; it had its brakes set and was located on level ground where its position could not be easily changed; it was on the highway where cars are intended to be principally used. Certainly this did not present any unusual allurement.

The appellees say that the key was not removed, and that is true. However, the presence of the key did not cause these boys to trespass upon the truck. That was something that was discovered after Anthony got in the car. There must be an allurement before there is liability for mere negligence even though a danger exists. Two boys were trespassing upon private grounds before they came upon a pond which they deemed suitable for bathing. They went swimming, the water was poisonous, and they died. Recovery was denied because the pond did not allure them to trespass, and very logically so for they trespassed before they discovered the pond: *United Zinc & Chemical Co. v. Britt, supra.*

The potential danger here was not imminent. It was not like a high power wire where the mere careless

touching of the wire might cause death. The car was not left in such condition that the mere jumping on the running board or going inside the car would cause it to move; it required expert knowledge to start it, which indicated sufficient intelligence upon the part of Anthony to know the consequences of his act, as we shall see.

The car was properly parked on the level in a place where it had a right to be, the ignition was turned off, the brakes were securely set, and no boys were then about the premises so far as the testimony discloses. Anthony was thirteen years of age and exhibited precocity with respect to the operation of an auto. His own language was as follows: "I went in there, I put my foot on the clutch, turned the key on and put my foot on the starter. Then she started, then I lift the clutch out and she went off with a jerk and start going." He said some boys were around the truck but that he did not see any of them on the truck. When the car was on the other side of the street he turned the ignition off and the truck stopped. Anthony knew nothing about how John got on or off the truck. Another witness, an adult, saw John jump on the running board as the car started and he stated that it moved slowly about four feet when John jumped or was thrown off and injured by the wheels of the truck. It will be observed that the car was not accidentally or unintentionally started when a boy happened to be in or passing the car, but was intentionally and designedly put in operation by one who knew the complicated operations necessary to start the car. With respect to the boy John the testimony is meager. All we know is that he jumped on the running board of a car in motion, or just as it started, fell off when it had gone four feet, and that the truck moved only about thirty or forty feet. It will be observed that it required the manipulation of one with experience to put the car in motion so that it caused the damage that it did. It would seem that

the owner had a right to assume that one who had sufficient knowledge to move this car under its own power would be responsible for the consequences of his act. In any event, the possibility of injury in the manner in which this occurred was not such an occurrence as the owner of the property was called upon to anticipate from a trespasser.

The mere fact that the key was not removed from the ignition lock was not sufficient of itself to show negligence: *Roscovich v. Parkway Baking Co.*, supra. That case also supports the general conclusion at which we have arrived in this case. There several boys attempted to jump on a truck and the operator drove them away. The driver went into a store on an errand, after shutting off the power and setting the brakes, but he did not remove the "contact key" from the lock through which electric power was supplied. In his absence a boy five years of age set the car in motion by operating the key, when the boy jumped or fell from the car and was injured. We held that the plaintiff could not recover. In *McGinnis v. Peoples Bros.*, supra, a six-year-old boy was injured while playing with other boys upon a wagon driven by defendant's employee. The wagon was started without giving the boy a chance to alight and he was injured. The boy and his father were not permitted to recover. In *Perrin v. Glassport Lumber Co.*, supra, a boy three years of age who trespassed upon a truck was injured by a fall from the truck when it was started, and it was held that he was a trespasser and could not recover for there was no evidence of wilful or wanton injury. It will be noticed that the son of plaintiffs in this case likewise fell from the truck when it was started.

The act of Anthony in moving the tractor was the proximate cause of the injury to John, plaintiffs' decedent. In *De Carlo v. Margolis*, 320 Pa. 500, 182 A. 381, the minor plaintiff was injured in playing around a fire escape from which there was evidence the boys

had been chased. There was also testimony to the effect that the owner had complained to the police of the conduct of the boys on former occasions. The boy was injured when one of the weights balancing the lower member of the fire escape fell on the plaintiff's foot. Mr. Justice DREW there said (p. 502) : "Even if it be assumed that the chain supporting the weights was defective, nevertheless, from all that appears, had the weights been allowed to remain in the basket the accident would not have happened. Between defendant's use of the chain and the injury to the minor plaintiff a cause intervened, for the intervention of which defendant could not be held legally responsible ...... Intermeddling by trespassers placed the weights in the position in which they did the harm complained of."

In *Rhad v. Duquesne Light Co.*, 255 Pa. 409, 100 A. 262, a driver parked a car on a grade and set the brake. A boy rattled the brake and started the car which struck and injured the plaintiff. The court there said (p. 415) : "The effective cause of the injury was shown to be the interference of the boy, and it was not the failure of the chauffeur to use the additional precaution of turning the front wheel against the curb. Suppose that, instead of merely turning the car adrift, as he did, the boy had gotten into the seat, and started the car, and had run over some one. Could the owner of the car have justly been held responsible? The car in question was left in a position analogous to that of a horse tied to a hitching post. It could not start until it was unfastened. If a wilful or careless boy untied the horse, his action in so doing would be the proximate cause of any injury which might follow. The car did not start itself. It was started as a result of the independent intervention of the boy, and his action must, therefore, be regarded as the effective legal cause of the injury."

The plaintiffs rely principally upon the case of *Reichvalder v. Boro. of Taylor*, 120 Pa. Superior Ct. 217, 181

A. 864, affirmed by the Supreme Court at 322 Pa. 72, 185 A. 270. Although that case was a close one it is distinguishable on the facts from the present case. There a road scraper which the boys of the neighborhood had been following all day was parked over night on a private property which was habitually used as a public playground by the children. The novelty of the machine and the operation of its exposed gears stimulated the natural interest of children. The machine had been parked with its machinery exposed and the boys in playing with it caused an injury to one of their fellows. It was felt that both under the playground rule and the attractive nuisance doctrine there was sufficient evidence to submit to the jury on the question of negligence. There was a radical difference in the facts in the present case.

Judgment reversed and here entered for the defendant.