Thompson et al., Appellants, *v.* Reading Company.

Argued November 25, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Nathaniel Shapiro,* for appellants.

*Henry R. Heebner,* with him *Wm. Clarke Mason,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 5, 1942:

This is an appeal from the refusal to take off a compulsory nonsuit in an action of trespass instituted by a minor plaintiff and his parents against the Reading Company to recover damages for injuries sustained by the minor. The testimony in support of plaintiffs' claim was that defendant owns and operates a railroad, running through Frankford, Philadelphia County, from Penn Street to Leiper Street, a thickly populated section; that for a period of time in excess of 10 years defendant maintained a turntable, which is located near where its tracks cross over Leiper Street; that the turntable turned in a concrete pit; that there was between 6 inches and a foot clearance between the turntable and the rim of the pit, and that prior to March 13, 1940, there was no device used to fasten the turntable securely, except a bolt which could be slid in an opening in the concrete part, but that this bolt could easily be pulled out by children, and was practically, prior to March 13, 1940, always unfastened. It was testified that the locking device on the turntable was broken. It was also testified that for at least 10 years this turntable was used by several children in the neighborhood as a plaything, and that "almost every day in the summer and about twice a week during the rest of the year" the children "would

push it around; some would be sitting on it, and some would be pushing, and they would jump on or off."

Defendant company maintained fences around its property where the turntable was but they were in a state of disrepair. There were also means to get to the tracks other than through the fences. The turntable and the tracks were elevated about 20 or 25 feet above the street but the tracks could be reached by means of steps and a sloping embankment.

At the time of the accident minor plaintiff, Richard A. Thompson, was eight years of age. His parents were both employed and he was left in charge of a twenty-year-old girl named Anna Nolan. Shortly before 5 P. M. he and several other boys left his home, about a block and a half away from the turntable. They went through an opening of the fence and then to the turntable. The number of boys, including himself and his companions, playing with the turntable were about fifteen. At this time the turntable was not secured in any way. Some of the boys turned the turntable and minor plaintiff, while attempting to get on while it was moving, fell into the opening between the turntable and the concrete wall, and his body was wedged there. The boys then stopped the turntable, and it took them about ten or fifteen minutes to extricate the victim. He sustained permanent injuries. Shortly after the accident a chain and lock were placed on the turntable securely fastening it. At the conclusion of plaintiffs' testimony a nonsuit was entered on the ground that no evidence had been shown against the defendant. The court based its decision on the case of *Thompson v. Baltimore & Ohio Railroad Company,* 218 Pa. 444, 67 A. 768, in which the facts were similar to the facts of the instant case. However, we feel that under more recent decisions of this court the nonsuit should not have been entered.

In *Hogan et al. v. Etna Concrete Block Co.,* 325 Pa. 49, 188 A. 763, a plaintiff, a boy five years of age, was injured under the following circumstances (quoting

from this court's opinion) : "Defendant manufactured concrete blocks on a large open lot in the Borough of Etna near the home of plaintiffs. A narrow track of rails ran from the plant to one end of the lot on an incline of about four degrees. Small cars were used on this track in carrying the blocks out to the place of storage. For some years children had been accustomed to play about the yard, among the blocks, and upon the cars which they rode down the grade. They played at will on the property at the sufferance of the owners who were fully aware of the user. No fence or watchman excluded them." Minor plaintiff while playing there was "caught beneath one of the cars loaded with concrete blocks. This particular car had been left at the head of the slope by one of the defendant's employees apparently without anything to hold it in place except perhaps its own weight. It had no brake, and the neighbors who extricated the child saw no stop-block that might have been under the wheel. What caused it to start does not appear, but the jury could infer that the motion was spontaneous and not the doing of the child. But even if it were set in motion by the child, defendant's negligence being obvious, recovery could be had, because an infant of such tender years cannot be guilty of negligence." The court, speaking through Mr. Justice DREW, said: "We are convinced that the facts entitle plaintiffs to recover. Toleration of trespass for sufficient time gives rise to privilege which adds to the duties of the occupier in the maintenance and use of his premises: *Kay v. Pennsylvania R. R. Co.*, 65 Pa. 269, 273. The 'playground rule' in Pennsylvania is a specialized application of this principle: see *Fitzpatrick v. Penfield*, 267 Pa. 564, 572. Here there was ample testimony that for years children were wont to play daily on defendant's grounds without its objective disapproval. Therefore defendant may not disregard the likelihood of their presence in the conduct of its operations [citing cases] or in the maintenance of hazardous machines or artificial conditions" [citing cases].

In *Reichvalder et al. v. Borough of Taylor,* 120 Pa.
Superior Ct. 217, 181 A. 864, the Superior Court held that
in an action for injuries sustained by minor plaintiff,
while playing with other children on defendant's road
scraper, the evidence was sufficient to sustain a finding
that defendant was negligent, and that its negligence was
the proximate cause of minor plaintiff's injuries, where
it appeared that during the operation of the road scraper
by defendant on the day of the accident the children had
manifested interest in it, that after working with it
defendant had parked it on a vacant lot, adjacent to the
borough highways, in the vicinity of land used by the
children for playground purposes, and in the neighbor-
hood of their homes, where it was accessible to them, and
that the machine had been left in such condition that its
mechanism could be operated by children attracted to it,
with resulting injury. Judge RHODES in his opinion said:
"Appellee relies upon such cases as *Thompson v. Balti-
more & Ohio R. R. Co.,* 218 Pa. 444, 67 A. 768; *Roscovich
et al. v. Parkway Baking Co.,* 107 Pa. Superior Ct. 493,
163 A. 915; *Dornick et ux. v. Wierton Coal Co.,* 109 Pa.
Superior Ct. 400, 167 A. 617; and *Fitzpatrick v. Penfield,*
267 Pa. 564, 109 A. 653. These cases, upon an examina-
tion of their facts, are readily distinguishable from the
case at bar. This is apparent when we consider that, in
the present case, the defendant knew, or ought to have
known, that the children would make use of the machine,
and nevertheless provided no guards or protection from
the peril to which they were exposed, although it might
reasonably have done so. Here the defendant knew that
the machine was alluring to children and appealed to
their childish instincts of curiosity and amusement. . . .
It was made easily accessible to the children of the neigh-
borhood, and constituted a peril not to be appreciated by
them." That case was appealed to this court (322 Pa. 72).
In an opinion by the present Chief Justice, this court af-
firmed the judgment of the Superior Court, saying, inter
alia: "It is urged upon us that the plaintiff cannot recover

under the rulings in *Thompson v. B. & O. R. R. Co.*, 218 Pa. 444, and *Widger v. Phila.*, 217 Pa. 161—that there is no liability for injuries to a child who is a trespasser or for injuries caused by some third person creating a situation of danger, which without the intervention of the third party would not exist. Here it appears that the operators of the machine had actual notice of the fact that it was a great attraction to children, many of whom followed it up and down the streets. Those in charge of it must have known that, if they put it on the vacant lot close to the street, its allurement to the children would still continue. If they had given thought to the situation, they would have known that it was dangerous if children played about it and that childish curiosity might lead them to tamper with it. It is not disputed that it could have been safely secured against the danger of injuring by tying the operating mechanism with a rope. It would seem to us that this precaution should have been taken." In the case of *Rapczynski et ux. v. W. T. Cowan, Inc.*, 138 Pa. Superior Ct. 392, 10 A. 2d 810, Judge PARKER (now Mr. Justice PARKER of this court) refers to "one of the 'turntable cases', *Thompson v. B. & O. R. R. Co.*," (supra) and says: "The opinion [in that case] however, recognizes the fact that the owner cannot treat a child as a trespasser where he *invites* or *allures* such child to come upon the premises."

The Restatement of the Law of Torts, Vol. 2, Sec. 339, p. 920, lays down this principle: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do

not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) *the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."* (Italics supplied.) In comment (f) on clause (d), pages 925, 926, the Restatement says: "A turntable may be essential to the proper functioning of a railway. The mere fact that it is maintained at a point where children are notoriously prone to trespass would not of itself be sufficient to make the railroad company liable under the rule stated in this Section. *If, however, the turntable could be made safe even against meddling children by a simple locking device, it would be unreasonable to maintain a turntable at such a place without such a device."* (Italics supplied.) In illustration 4, p. 926, the following appears: "The A Railway Company maintains a turntable at a point upon its unfenced land close to a highway upon which young children constantly pass on their way to and from school. These children, to the knowledge of the Company, are in the habit of playing about and upon the turntable. A simple locking device would make it very difficult for children to set the turntable in motion, but this device is not installed upon the turntable. While the children are playing about the turntable several of them set it in motion causing B, one of them, to be caught in the table and seriously hurt. The A Railway Company is liable to B". In Pennsylvania Annotations to the Restatement of the Law of Torts (1938), Vol. 2, p. 177, appears the following: "The Pennsylvania cases are not uniform with respect to whether, in order to subject the possessor to liability, the child must be attracted onto the land by the condition which constitutes the danger. . . . The theory that in order to permit a child to recover for bodily harm it is necessary to find that he was enticed or allured onto the land, belongs to the 19th century philosophy of tort law, under which no duties were owing to trespassers *qua* the condition of the land, and the idea

of enticement was created as the equivalent of an implied invitation to enter, which would thereby turn the child trespasser into a licensee. The true basis of the duty is the value of child life to the community. The danger arises out of the likelihood of child trespassing, and the element of 'enticement' or 'allurement' is merely a subsidiary element, important only insofar as it bears upon the likelihood of trespassing. The modern cases recognize that some duties are owed to trespassers" (citing and quoting from) . . . *Hogan v. Etna Concrete Block Co.* (supra) "Under this clause, in order to subject the possessor to liability, it is necessary that the dangerous condition exist at a place where it is likely, as the possessor knows or should know, that children will trespass." The facts of the case now before us bring it within the principles above quoted. Under the evidence defendant knew or should have known that children used this turntable as this minor plaintiff used it, for it has been used so by children for more than a decade. Under the principles from the Restatement which are in accord with this court's opinion in *Hogan v. Etna Concrete Block Co.* (supra) and other recent opinions of this court, the nonsuit was error. See Eldredge: "Modern Tort Problems," pages 190, 191, 197-204.

In *Thompson v. B. & O. R. R. Co.* (supra) defendant's turntable was "at times used by persons residing in the vicinity as a playground. One of the plaintiffs, a boy not quite eight years of age, entered the yard at night through an open gateway, and while standing near the turntable, with which some children were at the time playing, was struck by a projecting bar which they used in turning it, and was thrown into the pit and caught between the wall and the turntable." This court denied recovery. Justice MESTREZAT 'wrote a strong dissenting opinion, with which the overwhelming weight of authority both in Great Britain and in the United States, including the Restatement, is in accord. Of the states of the Union reporting decisions in "turntable cases", a

vast majority, to wit, twenty-three, have imposed liability on defendants where children have been injured while playing with turntables. On p. 775, sec. 177, of Corpus Juris appears this statement: "The attractive nuisance rule in the United States has had its development largely from injuries on railroad turntables which are regarded as attractive things for children to play with and yet involving danger to them which they are unable to appreciate, and in a large number of cases railroad companies which have left turntables unguarded and unlocked or not securely locked in places accessible to children have been held liable for resulting injuries to children playing on or about such turntables, especially where the railroad company knew, or was chargeable with knowledge, that children were in the habit of congregating and playing in the vicinity of the turntable."

In *Gulf, etc., R. Co. v. McWhirter*, 77 Tex. 356, 360, 14 S. W. 26, 19 Am. S. R. 755, the following is stated: "If a railway company should leave its turntable unfastened or so slightly fastened that children not sui juris can unfasten it and use it, then it should be held liable for an injury resulting from its use by such persons, for on account of their want of intelligence the negligence of the company must be deemed the proximate cause of the injury." In *Berry v. St. Louis, etc., R. Co.*, 214 Mo. 593, 608, 114 S. W. 27, the following is declared: " 'A railroad company is liable for injuries to trespassing children playing upon its turntables, when the same have been left unlocked and in a public neighborhood where children would reasonably be expected to play. The most logical opinions so holding are based upon the following grounds and reasons: (1) A turntable is a dangerous machine, created by the act of its owner; it is attractive to children and if publicly located and kept unlocked is a nuisance. (2) It can be easily locked and made safe when not in use. (3) A turntable, existing under the above-named conditions, is an inducement and implied invitation to children, and hence, when injured thereon,

they cannot be treated as voluntary trespassers. (4) Taking into consideration the childish instincts of children, a turntable existing under the above conditions acts as an allurement into a hidden danger or trap.' "

All Federal Courts follow the decision of the United States Supreme Court in *Railroad Co. v. Stout*, 84 U. S. 657. In that case a judgment in favor of a child six years of age who was injured while playing with other children on a turntable was sustained. The Supreme Court said: ". . . When it was proved that several boys from the hamlet were at play there on this occasion, and that they had been at play upon the turntable on other occasions, and within the observation and to the knowledge of the employes of the defendant, the jury were justified in believing that children would probably resort to it, and that the defendant should have anticipated that such would be the case. . . . It was to be expected that the amusement of the boys would have been found in turning this table. . . . This could certainly have been prevented by locking the turntable when not in use by the company. It was not shown that this would cause any considerable expense or inconvenience to the defendant. . . . ." That decision was approved in *Union Pacific Ry. Co. v. McDonald*, 152 U. S. 262, where Justice HARLAN characterized as "intelligent and impartial" what Judge DILLON said in his charge to the jury in *Railroad Co. v. Stout* (supra) to wit: "If the defendants did know, or had good reason to believe, under the circumstances of the case, that the children of the place would resort to the turntable to play, and that if they did would or might be injured, then, if they took no means to keep the children away, and no means to prevent accidents, they would be guilty of negligence. . . ." In *Keffe v. Milwaukee & St. Paul Railway Co.*, 21 Minn. 207, the Supreme Court of Minnesota said: "The complaint states that the defendant knew that the turntable, when left unfastened, was easily revolved; that, when left unfastened, it was very attractive, and when put in motion

by them, dangerous, to young children: and knew also that many children were in the habit of going upon it to play. The defendant therefore knew that by leaving this turntable unfastened and unguarded, it was not merely inviting young children to come upon the turntable, but was holding out an allurement, which, acting upon the natural instincts by which such children are controlled, drew them by those instincts into a hidden danger; . . . When it sets before young children a temptation which it has reason to believe will lead them into danger, it must use ordinary care to protect them from harm. What would be proper care in any case must, in general, be a question for the jury, upon all the circumstances of the case."

*Railroad Co. v. Stout* (supra) was followed by the British House of Lords in 1909 in the first "turntable case" in the English courts: *Cooke v. Midland Great Western Railway* (1909), A. C. 229. Plaintiff, five years of age, was injured while playing on a turntable. Lord MACNAGHTEN stated the question to be: "Would not a private individual of common sense and ordinary intelligence, placed in the position in which the company were placed, and possessing the knowledge which must be attributed to them, have seen that there was a likelihood of some injury happening to children resorting to the place and playing with the turntable, and would he not have thought it his plain duty either to put a stop to the practice altogether, or at least to take ordinary precautions to prevent such an accident as that which occurred?" Lord COLLINS, concurring, found that defendant had held out an "irresistible attraction to young persons" and that there was evidence from which the jury might "infer not merely a license but an invitation".

In numerous cases in which children have been injured while playing on other people's property, the appellate courts of Pennsylvania have upheld the right of recovery. In *Balser v. Young et al.*, 72 Pa. Superior Ct. 502, the Superior Court, in an opinion by Judge KELLER,

held that in an action to recover damages for the death of a minor child a verdict for plaintiff will be sustained, where the evidence is that the child was killed by the falling of heavy boards from the pile of lumber which she was passing, while playing on defendant's property. In *Henderson v. Continental Refining Company*, 219 Pa. 384, 68 A. 968, where a boy was killed by coming in contact with defendant's pumping machinery that was not inclosed or guarded, the court held that the case was for the jury. In *Carr v. Southern Pennsylvania Traction Company*, 253 Pa. 274, 98 A. 554, which was an action to recover damages for injuries to a four-year-old child sustained while she was playing on defendant's lot where rubbish was burning, it was held that the case was for the jury. In *Hydraulic Works Co. v. Orr*, 83 Pa. 332, the facts were that a six-year-old boy received fatal injuries by a platform falling upon him after he had strayed into a private alley where there were gates opened and shut as necessity required and upon which gates were posted the words: "Private" and "No admittance". This court, in affirming the judgment for plaintiff, declared, in an opinion by Justice AGNEW: "It has been often said, duties arise out of circumstances. Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property and its openness to *accident*, the rule will vary. The question then becomes one for the jury. . . . The common feeling of mankind . . . must say . . . that this spot is not so private and secluded as that a man may keep dangerous pits or deadfalls there without a breach of duty to society." Defendant "had good reason to expect that one day or other some one, probably a thoughtless boy in the buoyancy of play, would be led there, and injury would follow—especially, too, when prompted by knowledge that a fastening was needed." This decision and opinion by Justice AGNEW was cited with approval by Justice MOSCH-ZISKER, who, speaking for this court in *Gawronski v. McAdoo*, 266 Pa. 449, 454, 109 A. 763, said in reversing

judgment for defendant n. o. v.: "We have repeatedly held that, where a railroad company permits its yards or tracks to be used as a playground for children, the corporation is required to operate its rolling stock with due care to avoid injuring such children, and that the ordinary rule, as to the limited measure of duty owing to trespassers, is inapplicable . . . [citing six of our cases]. We have held likewise that one fixed with a duty to regard the safety of children is obliged reasonably to anticipate they will do the ordinary and natural things which may be looked for from them under the circumstances" [citing *Hydraulic Works Co. v. Orr* (supra)].

In *Weimer et ux. v. Westmoreland Water Company,* 127 Pa. Superior Ct. 201, 204, 205, 193 A. 665, the Superior Court affirmed a judgment recovered by parents for the death of their thirteen-year-old son on defendant's "No admittance" premises. Judge BALDRIGE said: "The testimony shows that the children of the neighborhood frequently went into defendant's buildings. . . . The so-called playground or attractive nuisance doctrine has been firmly established in our jurisprudence. . . . There was proof of a permissible use by defendant which imposed upon it the duty to use reasonable care for the safety of children frequently visiting its plant."

In *Martinez v. Pinkasiewicz,* 118 Pa. Superior Ct. 200, 203, 180 A. 153, the Superior Court, in an opinion by Judge PARKER, upheld a recovery for damages for the death of a minor, ten years of age, who was killed on defendant's premises which "the children of the neighborhood had for several years used as a playground". Judge PARKER said, quoting from *Selve v. Pilosi,* 253 Pa. 571, 98 A. 723: "Where children are permitted to use unsafe premises as playgrounds the proprietors thereof are held liable for resulting injuries. . . . Even granting, for the sake of argument, that the facts here proven did not show the use of the ground by the children as a common playground, . . . the facts do show a permissive use of the premises by the owner."

The following four cases cited by the appellee are clearly distinguishable in their facts from the case before us. (1) *Dolena v. Pittsburgh Terminal Co.,* 324 Pa. 228, 188 A. 112. There a seven-year-old boy climbed twenty feet up the side of a water tank, fell in and drowned. This court said: "The defendant . . . could not be required to anticipate that a lad of seven years who could not swim would climb up and fall into" the tank. "It cannot be said that the tank comes under the much distorted term "attractive nuisance". The correctness of this statement is manifest from the rarity with which tort cases arise from accidents to children climbing *water tanks.* But that turntables are attractive menaces to children is equally manifest from the frequency with which "turntable cases" come before the courts. The difference between the respective legal positions of the owner of a water tank and the owner of an unsecured turntable is in the comparative foreseeability of the respective risks of injury. The owner of a water tank is not expected to foresee that a boy will climb upon its perpendicular side in order to find a place to swim. Water tanks are not "attractive" while a moveable turntable is as attractive to children as a "merry-go-round". Besides, it's much more difficult to guard a water tank against a climbing boy than it is to fasten a turntable. (2) In *Zamaria et al. v. Davis,* 284 Pa. 523, the place of the accident was not used for such a length of time as to presuppose an invitation or permission to occupy the premises in the manner the victim used it. (3) In *Powell et al. v. Ligon,* 334 Pa. 250, the cost and burden of providing safeguards for children would unduly hinder, if not prevent, the beneficial use of the land where the injury occurred. (4) In *Colligen et al. v. Philadelphia Elec. Co.,* 301 Pa. 87, recovery was denied because the situation which gave rise to the injury was not one reasonably to be apprehended.

Appellee contends that the turntable being on a higher level than the street made it *not easily accessible*

and that therefore defendant cannot be justly charged with negligence in leaving it unlocked. The attractiveness and comparative accessibility to children of a potentially dangerous instrumentality are circumstances by which the owner's want of care is tested. If it is *in fact* inaccessible, no want of care can be imputed to its owner. But if it is only *apparently inaccessible* but *in fact* accessible to children, and the owner knows this or ought to know it he exhibits negligence if he fails to do those simple things which would make it harmless. That was the situation here. Under this evidence defendant must have known that this unsecured turntable was used frequently for many years by children as a plaything. It then became its duty so to fasten it when it was not in use as to make it no longer capable of being set in motion by children. The reasonably likely consequence of having an unsecured turntable near where there are children is to attract them to it, with resulting personal harm when they yield to the attraction, as they instinctively do. Justice HOLMES, speaking for the United States Supreme Court in *United Zinc Co. v. Britt*, 258 U. S. 268, 275, said: "While it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult."

The circumstances here revealed imposed upon defendant the duty of making its turntable secure (as it did *after* the accident) and the neglect of that duty led to the minor plaintiff's injury. Young children have no foresight and scarcely any apprehensiveness of danger. This is a circumstance which those owning instrumentalities potential for harm must bear in mind, for it is every individual's duty to use toward others what due care *then* and *there* requires. The question whether or not injury to a child legally incapable of negligence will import negligence to the owner or possessor of the injur-

ing instrumentality depends on the circumstances and that is why a turntable case is peculiarly one for a jury. A legal rule of required care based on the instinctive attitude of children toward a moveable turntable is one well calculated to make the owners of such instrumentalities lock them when they are not in use, exactly as railroad switches are locked when not in use in order to safeguard lives and property. The expense and attention required in so locking such instrumentalities are negligible. The well-known circumstance that children will play with an unsecured and accessible turntable is one to which the latter's possessor must conform his conduct in controlling it. Just as "the driver of a car must have it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstance": *Galliano v. East Penn Electric Co.,* 303 Pa. 498, 503, 154 A. 805, so he who is in control of a turntable must so safeguard it when it is not in use as to prevent its injuring any child in any situation that is reasonably likely to arise. The situation as to the probable injury to children in the case before us was one which to defendant's knowledge was "reasonably likely to arise" and it was its duty to take the appropriate and inexpensive saving action the situation called for.

This court said in *Pope v. Reading Company,* 304 Pa. 326, 333, 156 A. 106: "At common law it was held that every man must have some knowledge 'of the quality of the beast' (1 Hale P. C. 430) and use appropriate means to keep that beast from harming people. Public welfare requires that this same salutary rule apply to the inanimate objects in a man's possession and subject to his intelligent control." In *Bisson v. John B. Kelly, Inc.,* 314 Pa. 99, 110, 170 A. 139, we said: "It is a primary *social* duty of every person to take thought and have a care lest his action result in injuries to others. This social duty *the law* recognizes and enforces. . . . A normal human being is held to foresee those injuries which

are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen."

The record before us presented a case for the jury. So far as *Thompson v. B. & O. R. R. Co.,* 218 Pa. 444, 67 A. 768, is inconsistent with our decision in *this* case, *that* case is overruled.

The judgment is reversed with a procedendo.