## Rush, Appellant, *v.* Plains Township.

Argued April 16, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Elizabeth P. Mensch,* for appellants.

*Maurice H. Kirshner,* with him *Herman E. Cardoni,* for appellee.

OPINION BY MR. JUSTICE BELL, May 29, 1952:

Was a nonsuit—viewing the evidence in the light most favorable to the plaintiffs: *Davies v. D. L. & W.*

*R. R. Co.,* 370 Pa. 180, 87 A. 2d 183, properly entered in this case?

Sterling Rush, aged 7, by Francis Rush, his guardian, and Francis Rush in his own right, brought an action in trespass against the Township of Plains to recover damages for burns and other injuries sustained by Sterling on a refuse and garbage dump leased and maintained by the Township. The dump covered about a quarter of a city block and had originally been a strip mining hole. The township as well as other people of the community dumped refuse and garbage into this excavation or dump, commencing sometime during 1946.

The dump was approximately one mile distant from plaintiffs' home and from any other habitation.

On July 28, 1949, Sterling Rush left his home with his brother at approximately 3 o'clock p.m. and went to the dump for the the purpose of getting some funny books. There was a fire on the right hand side of the dump about thirty feet away and smoke was issuing from the ground ten feet away. Sterling walked on the left hand side of the dump to find the funny books when the surface suddenly gave way underneath him and he sank through the refuse almost up to his neck. There were hot coals on the bottom and he was burned about his legs and hands. The surface appeared to him and to other witnesses to be solid and no fire or smoke or hot coals were visible at the point of the accident until after the surface gave way. A watchman was maintained at this dump. There was no testimony that the township had started the fire, or had actual knowledge that any fire was smouldering underneath the surface; and the dangerous condition was undoubtedly a latent one. There was ample evidence that children went to the dump several times a week during vacation periods and on holidays for the purpose of pick-

ing up funny books, toys, junk, rags and similar objects and that occasionally boys shot rats there. The evidence also disclosed that since 1946, a fire had often been seen burning in some part of the dump, although not where the injury occurred.

We agree with the court below that the evidence was entirely insufficient to establish this dump as a playground; and that a dumping ground for ashes and refuse does not constitute an attractive nuisance: Cf. *Zellman v. Philadelphia*, 17 D. & C. 493 (Judge HORACE STERN) ; *Bruce v. Kansas City*, 128 Kan. 13, 276 Pac. 284; *Harlan v. Peaveley*, 224 Ky. 338, 6 S. W. 2d 270.

Plaintiff relies upon *Allen v. Silverman*, 355 Pa. 471, 50 A. 2d 275, where this Court said (page 474) : "This case is ruled by the principle set forth in Section 339 of the Restatement of the Law of Torts, which we adopted in Thompson v. Reading Co., 343 Pa. 585, 23 A. 2d 729, and Altenbach v. Leh. Val. R. R. Co., 349 Pa. 272, 37 A. 2d 429. It reads as follows: 'A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.' "

We agree with the contention of the plaintiffs that the township should under the testimony have known

that children were likely to trespass upon this dump; but we disagree with their contention that the township should have realized that the place where the accident occurred involved an unreasonable risk of death or serious bodily harm to trespassing children. If plaintiff's injury had occurred at the place where the fire was or had been burning, a different question would have been presented; but since the injury occurred in a part of the dump where there was no fire and no evidence that prior to the accident there had been any fire, and since it was clearly and indisputably a latent condition of which the defendant did not have any actual knowledge, or constructive notice, plaintiff cannot recover.

The language of Chief Justice CARDOZO in *Palsgraf v. Long Island R. Co.*, 248 N. Y. 339, 162 N. E. 99, is particularly applicable: ". . . the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty. . . . The risk reasonably to be perceived defines the duty to be obeyed. . . ."

We believe the evidence produced is insufficient to establish negligence on the part of the defendant or to warrant submission of the case to the jury.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The place at which the minor plaintiff in this case was injured was known as the Plains Township Dump, but for the children in the area it was a Treasure Land. They flocked here to gather up not only trash and trivia; they found here, according to standards of value of the juvenile world, diversified objects of entertainment and articles of intrinsic pecuniary worth. The citizenry of Plains Township, in an apparent burst of enthusiastic housecleaning, rid themselves of a vast

variety of things which ran the range from toys and alarm clocks to old furniture, all of which in due time were transported by the township trucks to the valley of discard on Jumper Road. Witnesses testified that on this abandoned treasure heap they could and did find toys, comic books, picture books, magazines, sinks, playing balls, hats, trunks, rags for carpets, pails, chrome, linoleum, boxes, glass objects, automobile parts, screens, paint, and iron.

The treasure hunt was not limited to small children. Adults drove to the dump in trucks to gather up junk. Steve Kosko, 14 years of age, made periodical trips to the spot on a bicycle, to which he had strapped a box in which he could carry as much as 100 pounds of rags, iron and chrome. His brother Walter Kosko testified to having even found a discarded sewing machine on the dump which he was able to sell. Some times comic books were thrown away here in such quantities that they could be gathered up in bushel baskets and resold at 3 cents each.

If there ever was a site or activity in the law books which could be characterized as an Attractive Nuisance, it was the Jumper Road Dump in Plains Township, Luzerne County, Pennsylvania. Not only did it bestow prizes on those who visited it, but it offered adventure as well. Young people came to the dump to shoot rats. In the summer time it became a mecca for huckleberry pickers, and hunters also bagged rabbits in the adjacent woodland. As an added attraction the dump was a rendezvous for hoboes, those ragged and unwashed cavaliers of the road who are always a source of fascination to children.

The record in this offers a plethora of evidence as to the attractiveness and the nuisance of the Jumper Road Dump.

It is simply inconceivable that the township authorities could not know what was going on at their dump,

which covered an area the size of a quarter of a city block. One witness testified that he saw a township watchman on duty at this point during the week days, and, of course, the knowledge of the township employe would be the knowledge of the Township. In 1946 a portion of the dump caught fire and its glow could be seen at night a mile away. The fire, which seemed to be confined to the right section of the dump, was never extinguished up to and including the day of the accident which is the subject of this lawsuit. One witness testified that he saw another boy, prior to this accident, sustain burns to his fingers when he came into contact with hot tar paper while seeking juvenile treasure.

On July 28, 1949, the minor plaintiff, Sterling Rush, 7 years of age, and his brother Francis, 10 years of age, started out from their home at about 5 o'clock in the afternoon, and walked through abandoned mine strippings and woods to the dump a mile away. While Sterling was picking his way over the left section of the dump, looking for comic books and traversing what seemed to be solid ground, the ground gave way beneath his feet and he sank up to his neck into a smouldering fire below the surface, sustaining severe burns to both legs and arms, burns which required hospitalization for 83 days and an extensive job of skin grafting.

At the ensuing trial the court entered a compulsory nonsuit, to remove which an appeal was taken to this Court.

In entering that nonsuit the learned Trial Judge, in my opinion, slighted facts and formula. The responsibility of proprietors for injuries occasioned to children because of unguarded potential dangers on their lands is no longer a humanitarian theory; it is a rule of law. Down through the centuries, courts and judges have had to take daring steps in order to make

the norms of jurisprudence conform to the demands of fundamental justice. In the matter of attractive nuisances, that step has not only been decisively taken but it has advanced to the stage where the rules applicable thereto can only be challenged for a possible further amplification in behalf of helpless children, and never for a contraction thereof. In *Weimer v. Westm'd*, 127 Pa. Superior Ct. 201, 204, our Superior Court through Judge BALDRIGE declared: "The so-called playground or attractive nuisance doctrine has been firmly established in our jurisprudence."

The learned Trial Judge, in his opinion discharging the rule to take off the nonsuit, said: "There was no evidence that the dump had been used as a playground." A playground does not necessarily mean a well-tended enclosure with trimmed hedges, baseball diamond, football gridiron, swings and a swimming pool. A playground is what the very word spells out: a ground used for play. Palmer Burridge, who over a period of two years visited the dump once or twice a week, testified as follows: "Q. When did you see young children, eight to twelve, every time you went to the dump? A. Most of the time, always seen them playing around. Q. Saw them all the time? A. Always, yes." Stephen Kosko, who went to the dump three or four times a week, testified: "Q. How old were the boys you met up there? A. Around, between ten and fourteen. Q. What were they doing? A. Playing. Q. How often did you see other boys there? A. Every time I went there, three out of four times they were there, around five or four of them." Mrs. Nellie Rush testified that she saw the children "playing with things they picked from the dump, I have seen them playing around there."

The appellee in his brief argues that the dump was far removed from any built-up section, specifying that it was "at least one mile from any habitation, including the home of the plaintiff."

But to a boy in the summer time, while on his way to play or adventure, a mile is but a few beats of a happy heart, and distance into the woods is only a song.

Jumper Road is not an outpost of civilization as appellee seems to contend. Automobiles and trucks use the highway regularly; sportsmen travel over it to and from their fishing and hunting spots; schools, churches and miners' families hold picnics on either side of the road in proximity to the dump which offers additional fun to the children in their day's festivities.

The lower court excuses the Township on the ground that the smouldering fire which injured the minor plaintiff was a latent danger. Everything is latent to one who closes his eyes, but if one chooses to shut off his vision while hurling a dangerous missile he cannot escape responsibility for the damage done the struck individual by asserting that he did not see him.

It does not require advanced study in physics to foresee that a fire on or in any part of a garbage and refuse heap will, if unchecked, eventually spread to other parts of it. As early as 1946 the Township knew, because of its trucks visiting the dump regularly, that the dump had become the object of combustion. It then, through the intervening years, added fuel to the fire of its knowledge, by pouring further garbage on the flames. The Township has attempted to exculpate itself from guilty knowledge of the fire which injured the minor plaintiff by pointing out that the accident occurred on the left side of the dump, whereas the visible fire was on the right side.

The caving in of the surface over which Sterling Rush was walking revealed hot embers underneath, which could only have come from a general conflagration throughout the entire dump. One witness testified that he saw smoke coming up through the surface

10 or 15 feet from the point where the seven-year old boy fell to the virtual furnace below.

Applying the familiar rule that, in considering a nonsuit, the evidence must be viewed in the most favorable light to the plaintiff, I am firmly of the opinion that the negligence of Plains Township in this case was flagrant and utterly inexcusable. Knowing that its dump had become a focus of interest to the community; knowing that children were attracted to it like a magnet because of its attractive features to unadult minds, knowing that fire inevitably spreads, the Township authorities yet did nothing to safeguard life and limb constantly being endangered by this not too somnolent dragon in the midst of their municipality. Common prudence dictated that the Township do one or more of many things, namely, extinguish the fire, fence off the dump, erect signs warning children and others to stay away because of danger, place a watchman or watchmen to keep trespassers away. The Township took none of these precautionary measures.

Appellee's counsel cites Section 339 of the Restatement, Torts, but that section only proves, from my view of the case, conclusively that the defendant was negligent.

"Sec. 339. A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass."

Answer: There can be no question whatsoever that the possessor knew children were likely to, and did, trespass here.

"(b) the condition is one of which the possessor knows or should know and which he realizes or should

realize as involving an unreasonable risk of death or serious bodily harm to such children."

Answer: Under the facts here, it is obvious that the possessor knew of the risks to children.

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it."

Answer: The minor plaintiff, being only 7 years of age, could, under no circumstance, be charged with contributory negligence.

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

Answer: There was no utility to the possessor in maintaining the fire. It was to its own advantage to extinguish the fire. And it would have been but little expense, in comparison to the protection afforded the children, to have put up a fence or in some other feasible way prevent children from entering the premises.

The lower court, in affirming the nonsuit, quoted from three out-of-State cases to bolster its decision, but there are Pennsylvania decisions which categorically rule the principle involved here. In *Thompson v. Reading Co.*, 343 Pa. 585, 599, 23 A. 2d 729, this Court said: "Young children have no foresight and scarcely any apprehensiveness of danger. This is a circumstances which those owning instrumentalities potential for harm must bear in mind, for it is every individual's duty to use toward others what due care *then* and *there* requires. The question whether or not injury to a child legally incapable of negligence will import negligence to the owner or possessor of the injuring instrumentality depends on the circumstances. . . ." Justice MAXEY, later Chief Justice, said also in that case: "The attractiveness and comparative

accessibility to children of a potentially dangerous instrumentality are circumstances by which the owner's want of care is tested. If it is *in fact in*accessible, no want of care can be imputed to its owner. But if it is only *apparently inaccessible* but *in fact* accessible to children, and the owner knows this or ought to know it, he exhibits negligence if he fails to do those simple things which would make it harmless."

The dump here was certainly accessible to Sterling Rush and the Township *knew* that it was accessible. And the Township failed to do those simple things which would have made the dump harmless to seven-year old Sterling Rush and other children.

In the case of *Hogan et al. v. Etna Concrete Block Co.*, 325 Pa. 49, 51, 188 A. 763, the defendant manufactured concrete blocks which were transported by a small car from the place of manufacture to the place of storage. For years the children played among the blocks and rode the car. No fence or watchmen excluded them from the defendant's premises. In affirming judgment returned in favor of a minor plaintiff injured on one of the defendant's cars, this Court said: "Toleration of trespass for sufficient time gives rise to privilege which adds to the duties of the occupier in the maintenance and use of his premises. . . The 'playground rule' in Pennsylvania is a specialized application of this principle. . . Here there was ample testimony that for years children were wont to play daily on defendant's grounds without its objective disapproval. Therefore defendant may not disregard the likelihood of their presence in the conduct of its operations . . . or in the maintenance of hazardous machines or artificial conditions."

I do not see how this decision can be held inviolate and yet Sterling Rush be denied recovery under the very same principle involved in this litigation.

I dissent.