## Quinlan v. Stewart

*Bernard V. O'Hare* and *Robert H. Jordan,* for plaintiffs.

*James N. Diefenderfer,* for defendants.

SCHEIRER, J., December 7, 1971.—In this trespass action, a jury awarded damages to the minor plaintiff and her father, as guardian, for injuries received when she was kicked by a horse in a corral on premises where defendants boarded and rented horses. A motion for a new trial, which was not pursued, and a motion for judgment n.o.v. were filed. Only the wife defendant requested binding instructions. A party who did not present a point for binding instructions at the trial is without standing to move for a judgment n.o.v.: Standard Brewing Co. v. The Knapp Co., Inc., 79 Pa. Superior Ct. 252. The rule has been termed "unexceptionable": Dora v. Dora, 392 Pa. 433, 141 A.2d 587.

As we must, we shall consider the evidence in the light most favorable to plaintiffs, resolving all conflicts in their favor and giving them all favorable inferences of fact reasonably deducible from the evidence.

When the minor was 10 years of age and living in an apartment house about five minutes walking distance away, she visited defendants' premises. Near a barn was a corral in which there were about 10 horses. She placed both defendants in the area. Two horses with girl riders went through an open gate into the corral. One of the defendants opened the gate and plaintiff followed the horses. Children were present; some within the corral. No one told her not to go into the corral. She observed three boys hitting horses with branches. She attempted to pat a horse and was kicked in the face, fell to the ground, and suffered serious

injuries. The horse was not identified in any manner. The child had been on the premises twice before, each time observing children in the area, some of whom were riding. The testimony of defense witnesses contradicted much of plaintiff's testimony, except that she was struck by a horse's hoof. Their version was that the child did not go through an open gate but crawled underneath it.

The jury was charged as to the duties of defendants toward the minor plaintiff, if she was treated as a trespasser or as a licensee. As to the former, they were instructed to consider Restatement, Second, Torts, §339, which provides as follows:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

In the case of Thompson et al. v. Reading Co., 343 Pa. 585, 23 A. 2d 729, the Supreme Court adopted

section 339 as the rule to govern trespassing children. The element of allurement inherent in the attractive nuisance doctrine was eliminated. In Dugan v. Pennsylvania Railroad Company, 387 Pa. 25, 127 A. 2d 343, it was said that the Restatement rule supersedes and supplants the doctrine of attractive nuisance and the playground rule.

The parties are not in agreement as to whether the rule in section 339 is applicable in this case. We have a grave concern whether the child's injury was caused by "an artificial condition upon the land." That a barn and corral are artificial conditions within the rule, we have no doubt, but neither caused the injury. In comment a, following section 339, it is said:

"This Section is concerned only with conditions on the land, and not with activities of the possessor. As to liability to children for such activities, see §§333, 334, and 336."

Is not the conducting of defendants' business an activity? If defendants are liable to plaintiff, would it not be due to the activity and not to an artificial condition? This, then, raises the question whether the boarding and renting of horses, domestic animals, is a dangerous activity. We think not. We also call attention to subparagraph (e) which places upon the possessor of land the burden of reasonable care upon which we will comment later.

The duty of a landowner or possessor of land to children expressly or impliedly invited on the premises is to exercise reasonable and ordinary care with respect to the rights of such children. The possessor is not an insurer to either a trespassing child or to a child classified as a licensee.

Whatever the status of plaintiff in this case, the shadow of a long-established and widely held common-law principle is evident. It is stated thusly:

"The common-law rule as to injuries and deaths caused by any domestic animal, that is, that the owner is liable where it appears that the animal had the preexisting vicious propensity to do the particular injurious act complained of, and where it further appears that the owner had knowledge thereof at a time prior to the act, applies in cases involving injuries and deaths caused by the kicking, stamping, knocking down, and biting of humans by horses. Under the rule, a horse, being a domestic animal, is presumed not to be dangerous to persons, so that where damages are sought by one allegedly injured by the bite or kick, etc., of a horse, the plaintiff must prove that the particular animal was of a dangerous or vicious nature, which was known or should have been known to the owner, since the misconduct which imposes liability on the owner is the keeping of a dangerous or vicious animal, with knowledge of its propensities, or the failure to restrain it from injuring persons": 85 A.L.R. 2d 1162, §2.

Also see P.L.E., Animals, §21; Sum. Pa. Jur., Torts, §201; 4 Am. Jur., 2d Animals, §86. There is no evidence that the offending horse in this case was vicious. In fact, as noted previously, the identity of the horse was not shown. We have found no justification in the law that 10 horses in a corral are any more dangerous than one horse. We do not believe that the standard of care resting upon defendants as to this plaintiff, whatever her status, can be delineated to a jury without reference to the domestic animal principle that previous viciousness and scienter must be shown. We did read to the jury defendants' point on this principle, but explained that this was not plaintiff's theory. It would have been appropriate to refuse the point and direct a verdict because the record was barren of any testimony either way as to the disposi-

tion of either one horse or 10 horses. Whether such evidence is available to plaintiffs, we do not know, but we believe it essential to their recovery.

Thus, the verdict is against the weight of the evidence and because this would be the case even if the verdict against the husband alone would be permitted to stand, we shall, in the interest of justice, allow a new trial as to both defendants: Fisher, Executor v. Brick, 358 Pa. 260, 56 A. 2d 213: Gertz v. Balliet et ux., 431 Pa. 441, 246 A. 2d 108; Thynn Tab Co., Inc. v. Schwartz, 31 D. & C. 585.

The defendant wife has argued that insufficient evidence was presented to permit the submission of her status as a co-owner of the business to the jury. It was shown that the defendant husband was the sole lessee of the premises, that the parties filed a joint tax return showing the income and expenses of the business operation, that the bills were paid from a joint account, and that both defendants were observed on the premises near the corral a number of times. We think that the question of whether the wife was a joint owner and had the right of joint control was properly given to the jury for its determination.

As to granting of a new trial, sua sponte, we note that the limitation against so doing beyond the term does not apply where one defendant does not file motions and another defendant does, which, in effect, is our situation here. In Steckel v. Strickland, 50 D. & C. 2d 784, 789, the court commented:

"Finally, there is no merit in the contention of counsel for plaintiffs that the trial court's power to order a new trial with respect to defendant Strickland's expired with the end of the term on December 6, 1970. At the present time, and until the trial court determines otherwise, the fortunes of both defendants are procedurally linked together. The posttrial motions

of the codefendant were filed timely and within the term. The trial court bears the responsibility to dispose of them with due regard to fairness to all parties, and this objective cannot be accomplished without exposing defendant Strickland's to the possibility of a new trial, even though such exposure was not requested."

ORDER

And, December 7, 1971, defendants' motion for judgment n.o.v. is refused and defendants are granted a new trial on the court's motion.