### John F. Devine, Administrator, Appellee, v. Armour & Company, Appellant.

### Gen. No. 15,046.

1. CHILD LABOR LAW—*section 6 construed.* Section 6 of the child labor law which provides that "no child under the age of sixteen shall be employed or permitted or suffered to work" has no application unless an employment has actually and legally taken place; a license is not the equivalent of an employment.

2. CHILD LABOR LAW—*section 6 repealed.* Section 6 of the act of 1897 is repealed by sections 11 and 15 of the act of May 15, 1903.

3. NEGLIGENCE—*how question of what attractive nuisance determined.* The question of what is or is not an attractive nuisance is ordinarily a question of fact for the jury to determine.

4. NEGLIGENCE—*what not attractive nuisance.* The owner of a

dilapidated house cannot be held to a duty to prevent children from coming on the premises to gather wood by tearing it down, especially in the absence of any proof that children without express permission were in the habit of indulging in such practices.

5. NEGLIGENCE—*duty of owner of building towards licensees.* Towards licensees whether adults or minors the owner owes only a negative duty not to set traps, but no positive duty to exercise care either as to keeping his buildings in repair or to carry on any work that may be done thereon in a careful manner.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed. Opinion filed December 2, 1910.

A. R. URION and A. F. REICHMANN, for appellant.

B. J. WELLMAN, for appellee.

MR. PRESIDING JUSTICE MACK delivered the opinion of the court.

This is an appeal from a judgment recovered for injuries causing the death of Benard Allen, a lad of thirteen years. The direct cause of death was the injury sustained by Allen through the collapse of an old frame building which he and others were destroying for the purpose of taking and carrying away the wood.

Shortly before the accident defendant had acquired the property with a number of dilapidated buildings thereon. Desiring to erect business buildings on the land, defendant had, on the day before the accident, contracted with a wrecking company for the removal of the old buildings in consideration of the salvage to be obtained therefrom. On the day of the accident, however, one Brown, an employe of defendant, gave leave to decedent and others, men, women and children, at their solicitation, to enter the premises and to take away the kindling wood from it. They rushed in and proceeded to demolish the structure so rapidly and with such lack of wrecking skill that within fifteen to twenty minutes it suddenly collapsed, falling on the decedent.

While the declaration contains four counts the court withdrew the third count, over plaintiff's objection, from the consideration of the jury. Cross errors are assigned on this action of the court. The third count was based on the violation of the Child Labor Law and charged that Allen had been employed by defendant in an extra hazardous occupation.

While section 6 of the Act of June 9, 1897, the Child Labor Law, provides that "no child under the age of sixteen shall be employed or permitted or suffered to work" at an extra hazardous employment, the words "permitted or suffered to work" must be limited to such permission and sufferance in the course of an employment, inasmuch as the title of the Act is "An Act to regulate the Employment of Children." If therefore Brown either had no authority to employ Allen or did not in fact employ him there was no employment and the Act has no application. While defendant, if it had not already made the contract with the wrecking company, might have obtained a benefit from the destruction of the building, it is clear that neither Brown nor the people who engaged in the work regarded the transaction as in the nature of an employment. Unlike the arrangement between defendant and the wrecking company, neither Brown nor decedent and his companions either expressly or impliedly proposed to the other that the work should be done in consideration of the salvage or the salvage given in consideration for the work. The people desired wood; Brown told them that they might take it. While they would have to tear and carry it away in order to obtain that which they wanted, the use of it for kindling, the one was not intended by either party as the consideration for the other. At the best, they were given a license to destroy; but they were not employed therefor. There was in our judgment no employment.

Moreover in our opinion section 6 of the Act of 1897 is repealed by sections 11 and 15 of the Act of May 15, 1903. Hurd R. S. 1909, pp. 1079 and 1080.

The court, therefore, did not err in withdrawing this count. The first count charges that defendant desired the building wrecked for its own benefit; that it knew that wrecking such a dilapidated building required special skill but that skilled labor would have cost more than the salvage; that defendant was bound not to allow decedent or others unskilled and ignorant of the dangers of wrecking to enter the building for the purpose of wrecking it in consideration of the salvage; that by permission of defendant they did so enter; and that because of the dangerous condition and because defendant allowed it to be wrecked by unskilled persons it collapsed. The second count is in substance similar to the first except that it charges that defendant's duty was not to "invite, request, hire, or employ" unskilled persons and that it negligently "invited, requested, hired and employed" them. The fourth count after charging, as do the other counts, that the building was in a neighborhood thickly settled with poor people and small children, "who usually and customarily gather wood for fire wherever allowed and permitted to do so," alleges that the building in its then condition with old wood on, in and about it, constituted a dangerous and unsafe attraction to small children; that defendant negligently failed to remove the dangerous attraction or make it secure or warn the people of the dangers, and because thereof decedent was allured to the dangerous attraction to get wood.

If there be any substantial difference between the first and second counts, the first may be said to be based upon a mere permission given to the people, whilst the second is based upon a hiring. As hereinbefore stated, the proof failed, in our judgment, to show a hiring, and even if the count stated a good cause of action the proof totally failed to support the allegation.

The fourth count is based on the principle of attractions dangerous to children to whom, even if tres-

passers and intermeddlers, the owner owes a duty to exercise care that they be not injured. Assuming that the count states a good cause of action despite the fact that it alleges that children enter such premises to carry away wood only when expressly permitted to do so, and fails to charge that such permission was granted, the allegation of a dangerous attraction has not, in our judgment, been proven.

While the question of what is or is not such an attraction is ordinarily a question for the jury (Stollery v. C. S. Ry. Co., 243 Ill. 290), in this case not the slightest evidence has been offered in support of the allegation. On the contrary, it is perfectly clear that the house itself even in its dilapidated condition would not have attracted the children and that they would not, but for the express permission given, have entered thereon.

While the doctrine of the turntable cases is not limited in this State to those nuisances which are automatically dangerous to children seeking merely amusement, nevertheless the owner of a dilapidated house cannot be held to a duty to prevent children from coming on the premises to gather wood by tearing it down, especially in the absence of any proof that children, without express permission, were in the habit of indulging in such practices.

There is moreover no proof which would justify a jury in finding (what is however not alleged in the count) that the building constituted a dangerous attraction even to children to whom permission to enter had been given. If the house ever became a dangerous attraction it was only while and because it was in the process of demolition. This count however is based on the claim that the house, because of its dilapidated condition, not a house in process of demolition, had become a dangerous allurement to the decedent.

If the first count, which alleges that decedent with others tore down the building in a negligent manner,

Devine v. Armour & Co., 159 Ill. App. 74.

can be sustained at all, it must be on the theory that the force of this allegation is counteracted by the further allegation of decedent's age and ignorance that the work was being done negligently, and on the further theory that a special duty was owing to decedent because of his age. Unless defendant's duty to such a minor is different from that to an adult, no cause of action is stated, inasmuch as the decedent was, at the best, a mere licensee who came upon the premises solely for his own profit. Towards licensees however, whether adults or minors, the owner owes only a negative duty not to set traps, but no positive duty to exercise care either as to keeping his buildings in repair or to carry on any work that may be done thereon in a careful manner. The exception to this rule is the case of a dangerous attraction; the duty in respect thereto is, however, not dependent upon the license. Even an infant trespasser, in case of a dangerous attraction, has rights greater than those of an adult licensee.

This first count however is not based upon the allurement of a child by a dangerous attraction; and if it were, the evidence, in our judgment, would not sustain the charge. While such a building in process of destruction may be dangerous, the danger is not hidden from a child of decedent's age, while disclosed to an adult. This lad was not a mere baby. He was at least up to the average of his age. He knew as well as an adult that such a building in such condition and under such handling must fall. There is no evidence to support the allegation of his ignorance. The defendant therefore is not liable even if Brown was its agent for the purpose of giving permission to tear down the building.

We are of the opinion however that the evidence in the case demonstrates that he had no such authority either actual or apparent.

The judgment must therefore be reversed.

*Reversed.*