Bartleson et al. *v.* Glen Alden Coal Company,
Appellant, et al.

Argued November 11, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Arthur H. James,* with him *Franklin B. Gelder, Gilbert S. McClintock* and *J. H. Oliver,* for appellant.

*Daniel J. Flood,* with him *James L. Brown,* for appellees.

OPINION BY MR. JUSTICE LINN, March 24, 1949:

Defendant appeals from the discharge of its rule for judgment n. o. v.

Ross Bartleson, aged 11 years and eight months, sustained serious and permanent injuries by contact with a 4,000 volt wire, on a tower on land of the Glen Alden Coal Company, hereinafter referred to as company. The plaintiff's right arm had to be amputated, at first above the elbow and finally at about four inches below the shoulder. His left hand was seriously burned and there remains a permanent 25% disability. He also sustained thigh burns resulting in permanent loss of strength in the left thigh. Three extensive skin grafts were made on his legs, left hand and thighs. As the amount of

the verdict is not challenged it is unnecessary to enlarge on the injuries.

In considering motions for judgment n. o. v. the familiar rule requires that the court consider the evidence in the light most favorable to the plaintiff, resolving all conflicts in his favor and giving him all favorable inferences of fact reasonably deducible from the evidence. *Phillips v. Philadelphia Transportation Co. et al.,* 358 Pa. 265, 56 A. 2d 225 (1948). The jury could have found the following facts, amply supported by the record.

The company erected a high tension transmission tower on its land in the borough of Warrior Run, Luzerne County, Pennsylvania. This tower supported wires carrying electric power, used for general mining purposes, which was transmitted through heavy steel cables into a borehole leading into one of defendant's mines. The tower, forty five feet high, was erected on concrete piers which were two feet above ground elevation. The tower is perpendicular and of the usual four column or leg construction type. From a tower approximately $1\frac{1}{2}$ to 2 miles distant were strung three bare wires, 5/16 of an inch thick, to the top of the tower involved here. These wires were strung to a set of switches, at the tower top and were then brought down on insulators to a set of disconnecting switches; from this point the power was conducted by cables encased in insulated steel armor through the borehole into the mine. The top switches were mechanically operated and were 47 feet above ground level. The lower switches were operated with a pole and were 15 feet above ground level. The nearest point where uninsulated wires were accessible was at the lower disconnecting switches, 15 feet above the ground and nine inches to the side of the upright column.

The tower was surrounded by a fence seven feet high and the enclosure was entered through two panel gates

six feet high. The tower is located alongside the tracks of the Central Railroad of New Jersey and between those tracks and the Lehigh Valley Railroad, about 1100 feet from Front Street in Warrior Run Borough. Warrior Run and Sugar Notch boroughs are approximately a mile apart on opposite sides of the railroad tracks, so that these tracks must be and were traversed in traveling back and forth.

The jury had the benefit of a view of the land and premises surrounding the tower and conditions were about the same as the time of the accident.

On June 27, 1946, the company entered into a contract with William B. Richards, a contractor and builder, whereby Richards agreed to perform construction work about the tower. A portion of the then existing fence was to be removed, a new and larger fence erected and new concrete foundations were to be constructed for transformers. The company agreed to furnish "all new fence material required." On Thursday, August 8, 1946, this work was completed except for some minor work not pertinent here. The gate was ready to be locked and at about 1 P.M. Richards' foreman, John Rudowski, informed Robert Smith, construction inspector for the coal company, that the fence was completed. Frank Nagorski, one of Richards' employes, saw Robert Smith at about noon on August 8th and ". . . told him the fence was ready and the gates were ready for the lock." On August 8th Rudowski made a routine inspection of the tower and saw the work was complete; as a "precaution" he "picked up a couple of strands of [soft steel] wire and . . . fastened the gates" by twisting the wire about 6 times with his hands. William B. Richards, on August 8, 1946, inspected the work after it was completed. He also informed the construction inspector, Smith, that the fence was completed. The coal company's construction inspector testified that the coal company was to furnish the lock but failed to do so.

On Friday, August 9, 1946, between 11 and 12 o'clock A.M. the coal company's construction inspector made an inspection of the tower, and saw that the gates were "secured" with two strands of the wire, 8 or 9 gauge and about an eighth of an inch in diameter. No further visits to the tower were made by any of defendant's employes until after the accident.

On Sunday, August 11, the plaintiff and three minor companions, Gerald O'Brien, Wm. Frostbutter and Joseph Jablonski, visited the land adjacent to the tower to pick apples from an apple tree nineteen and a half feet from the tower. The gate of the fence around the tower was open and all four of the boys went in the enclosure and all of them climbed the leg of the tower closest to the gate. On the leg of the tower there were iron studs which ran from the bottom of the tower to the top. These "steps" were ordinarily used by linemen in ascending the column. The boys played around the tower several days a week to almost every day for years and they had always seen the gate locked before. Some of the boys thought the power was shut off because the gate was left wide open. The plaintiff did not know that the tower was dangerous.

The next day, Monday, August 12, 1946, at about one o'clock P.M., the plaintiff and three minor companions, Frank Zemetra, Raymond Brozusky and John Osmena went to the land around the tower to play "cowboys and indians" or "cops and robbers," and to pick apples. The boys stopped by a nearby well, ate apples from the apple tree and then went to the tower. The plaintiff entered the tower enclosure through the gate which was still open and twice climbed up the leg of the tower on the 5 inch iron bolts which protruded from the sides of the column. After he climbed the tower the first time (about 15 feet) he waved a toy cap gun at his companions and said, "Bang, bang, I shot youz all." He climbed the tower a second time about ten to twelve feet,

came in contact with the electric current at about 15 feet and fell to the ground. Several adults were called and assisted in taking plaintiff to the Nanticoke State Hospital. They found the gate open and no evidence of any lock or wire securing the gate. There is no evidence as to how the gate was opened between August 9th and August 12th, but the boys did not open the gate or remove the wire.

There were three "well-worn" paths which passed close by the tower which were frequently used by the people of Warrior Run Borough in going to and from school, church and work. The residents also used the Central Railroad tracks, which passed within a few feet of the tower, to and from school and church. For about ten years prior to the date of the accident children of the Borough were in the habit of going to the company's land near the tower to pick apples and grapes, drink from a nearby spring (96 feet away) play cops and robbers, cowboys and indians, baseball and other games. The Borough playground was not open and in use in the summer of 1946. Grade schools were closed during the summer months.

The plaintiff did not know what the electric wires were for and was found after explicit and adequate instructions to the jury not guilty of contributory negligence.

The presiding judge charged the jury that plaintiff had not established the existence of a playground but submitted the question whether or not the company had maintained what in many of our cases is described as an "attractive nuisance." The sole issue is whether or not the question of "attractive nuisance" was one for the jury, the injury being admitted. We think it was properly submitted to the jury. Compare *Altenbach v. Lehigh Valley R. R. Co.*, 349 Pa. 272, 37 A. 2d 429 (1944); *Thompson et al. v. Reading Co.*, 343 Pa. 585, 23 A. 2d 729 (1942); *Daltry v. Electric Light Co.*, 208 Pa.

403, 57 A. 833 (1904); *Markovich v. Jefferson Coal & Coke Corp.,* 146 Pa. Superior Ct. 108, 22 A. 2d 65 (1941).

The Restatement of the Law of Torts, section 339, provides: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

This case is governed squarely by these principles. The defendant knew or should have known that children were likely to trespass upon its land. For years without objective disapproval children had played games within 20 to 400 feet of the tower; for years adults and children alike had used pathways carrying them past and within a few feet of the tower. In view of the overwhelming character of the testimony the jury could reasonably infer that the defendant coal company, through its agents, actually knew that children played in the vicinity of its tower. "Toleration of trespass for sufficient time gives rise to privilege which adds to the duties of the occupier in the maintenance and use of his premises": *Hogan et al. v. Etna Concrete Block Co.,* 325 Pa. 49, 51, 188 A. 763, 764 (1936). He may not thereafter "disregard the likelihood of their presence in the

conduct of [his] operations . . . or in the maintenance of hazardous machines or artificial conditions." *Altenbach et ux. v. Lehigh Valley R. R. Co.*, 349 Pa. 272, 275, 37 A. 2d 429, 430 (1944) (citing cases).

The appellant argues that there was not present a necessary element of allurement, citing *Rapczynski et ux. v. W. T. Cowan, Inc.*, 138 Pa. Superior Ct. 392, 10 A. 2d 810 (1939). This contention has been repudiated explicitly by this Court. *Thompson et al. v. Reading Co.*, 343 Pa. 585, 23 A. 2d 729 (1942); *Costanza et al. v. Pittsburgh Coal Co.*, 276 Pa. 90, 119 A. 819 (1923). The artificial condition causing the injury need not induce the trespass; it is sufficient that trespassing is likely to occur where a dangerous condition exists. See *Restatement of Law of Torts*, comment on clause (a) of section 339; Eldredge, *Modern Tort Problems*, 190-1.

The defendant was guilty of negligence when it failed to exercise ordinary care in safeguarding the tower. The jury found that over a period of more than four days, from August 8 to August 12, the defendant had taken no steps to exclude foreseeable trespassing children from the tower. It permitted two thin strands of twisted wire to bar access to a condition which the company should certainly have realized involved a serious risk of death or bodily harm to a child. The company's construction inspector was informed by three persons that the gate was "ready for a lock." He visited the tower, and saw the manner in which the gates were "secured," but took no steps to have them locked. Whether, under the circumstances, this was negligence, the failure to exercise ordinary care, was for the jury. *Altenbach et ux. v. Lehigh Valley R. R. Co.*, supra. Having failed to exercise ordinary care in securing the gate, it was foreseeable that children would be attracted to the tower innocent of its dangerous nature or under the misapprehension that the power was turned off. It has not been suggested that the coal company would have suf-

fered any inconvenience by exercising due care. The installation of a locking device, at negligible cost, would have obviated the risks to children. *Restatement of Torts,* section 339, comment on clause (d).

Appellant contends that "(a) It was not required to maintain an enclosure around the tower.

"(b) It had neither actual nor constructive notice of the open gate.

"(c) To constitute an attractive nuisance, the danger must be present on the ground or within reasonable reach of the minor.

"(d) Appellant could not reasonably anticipate that a minor would climb this tower to the point where the injury was sustained."

Had there been no enclosure at all, seems to run the argument, there could have been no lock and therefore the failure to place a lock on the gate cannot be deemed negligent. The error in this contention is that it assumes that there would be no liability for maintaining its tower unguarded; in the circumstances that is incorrect. The modern rule, applicable in such circumstances, limits unrestricted use of land in the interest of safeguarding children from the danger of serious injury. So long as defendant can be charged with the duty to anticipate trespassing children, that they will accept the invitation to enter the enclosure and climb the tower it cannot remain passive. The absence of notice of the open gate, if it be assumed, is immaterial; the negligent act was one of omission, failing so to secure the gate that it would not be opened. It was the defendant's duty to take reasonable precautions to prevent children from having access to its tower and coming into contact with its manifestly dangerous property. Compare *Costanza v. Pittsburgh Coal Co.,* 276 Pa. 90, 119 A. 819 (1923). It is immaterial whether the enclosure was maintained to prevent interference with the structure or in recognition and performance of its

duty to trespassing children. The defendant avoided liability so long as it exercised ordinary care, knowingly or unknowingly. When defendant failed to continue hitherto observed precautions it breached its duty to foreseeable minor plaintiffs likely to be attracted to the dangerous instrumentality which it maintained.

There is no rule which requires that the dangerous condition must be on the ground or within reach of a minor. Such a distinction is artificial, without logic or experience to support it. What this distinction really drives at is the question of whether or not a defendant shall be held reasonably to anticipate that a child will bring himself within the orbit of the danger. The plaintiff's hand came into contact with the wire approximately 15 feet above the ground; from this it is to be inferred that he climbed about 10 to 12 feet. The act of climbing was not unusual, on previous days other boys had done precisely the same thing. The tower was equipped with pegs or studs intended to facilitate climbing. These pegs were accessible from the ground. It is strange that defendant would argue that he could not anticipate the use of these pegs for precisely the purpose for which they were put there. Judge PINOLA, writing for the court below, observed: "From the photograph, as confirmed by our view of the premises, it is quite apparent that any eight-year-old child can climb the tower by stepping first on the pier, then a foot higher to the horizontal bar which is flat, then to the flat side of the right angle crossbar, then to the flat side of the left angle crossbar, and then to the first step on the column. Exactly the same situation prevails at the other column.

"We were not able to measure the distance between the steps because the gate was locked. We did measure the concrete pier in defendant's Exhibit 4A and it happens to be as high as the distance is between two steps on the same side of the column. If the concrete is two feet high, then the distance between the two steps is two feet and the distance between any step and the

intervening step on the opposite side of the column must be twelve inches. Counting steps on one side of the column from the top down, there would seem to be about 38 spaces between the alternate steps, and figuring from that standpoint it would seem that there would be about 14 inches between steps. By either process, the distance is found to be such that any child would be able to negotiate the steps."

That children will accept a situational invitation to climb is a matter of common knowledge. Compare *Thompson et al. v. Reading Co.*, 343 Pa. 585, 23 A. 2d 729 (1942); *Bonczek et al. v. Phila.*, 338 Pa. 484, 487, 13 A. 2d 414 (1940); *Novak v. Ford City Borough*, 292 Pa. 537, 542, 141 A. 496 (1928).

The jury found that plaintiff did not realize or at best imperfectly realized his exposure to danger. The tower was not so obviously dangerous that the child must be deemed to perceive the risk involved as though he were an adult. Defendant coal company should have anticipated that children would not observe or fully appreciate the inherent danger in its electrical apparatus. See *Restatement of the Law of Torts*, section 339, comment on clause (a) b.

Counsel for appellants and appellees have presented capable analyses of cases from Pennsylvania and other jurisdictions. Some of them are distinguishable on their facts, others are in seeming conflict. To the extent that past cases are in conflict with the view of section 339 of the *Restatement of the Law of Torts*, which we have adopted, they are no longer authority. See *Patterson et al. v. Palley Mfg. Co. et al.*, 360 Pa. 259, 265, 61 A. 2d 861, 864 (1948).

Judgments affirmed.

---

DISSENTING OPINION BY MR. JUSTICE DREW:

I cannot join in the conclusion of the majority. As I view this case, there is nothing in the record showing

a breach of duty by defendant for which it should be held liable in damages.

The Restatement of the Law of Torts, Section 339, which we adopted in *Thompson v. Reading Co.,* 343 Pa. 585, 23 A. 2d 729; *Altenbach v. Leh. Val. R. R. Co.,* 349 Pa. 272, 37 A. 2d 429, and *Allen v. Silverman,* 355 Pa. 471, 50 A. 2d 275, provides: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) *the children because of their youth do not* discover the condition *or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it,* and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein." (Italics added.)

Concerning clause (c) of the Restatement, supra, this Court said, in *Prokop v. Becker,* 345 Pa. 607, 610-11-612, 29 A. (2d) 23: "The use of the verb *do* might lead to the belief that the duty of care depended entirely upon what the child in fact realized instead of upon what he should have realized. That such is not the case, however, is readily apparent from comment *b,* entitled 'When risk such that children *can* appreciate it' (Italics added), which states that the duty of the possessor of land is 'only to keep so much of the land upon which he should recognize the likelihood of children trespassing, free from those conditions which, though observable by adults, are likely not to be observed by children or which contain risks the full extent of which an adult would realize but

which are beyond the imperfect realization of children. *It does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them.'* (Italics added.) The Pennsylvania law is in accord with this principle. . . . The principle underlying the rule is that injury to children from obvious dangerous causes is not foreseeable by the owner, and therefore he cannot be placed under any duty to remove the risk."

In the instant case, it is clear that the minor plaintiff realized or should have realized the risk of his trespassing. The extreme danger of falling from the tower or of coming in contact with the electric wires was certainly obvious, or should have been, to any normal boy of minor plaintiff's age. Therefore, since one condition of liability, i.e., that set forth in clause (c) of the Restatement, is lacking, the majority, in my opinion, is in error in sustaining these judgments in plaintiff's favor.

In this age of electricity, such high tension towers are found in all parts of this Commonwealth and nation. The vast majority of them are unfenced. Boys at an early age recognize these towers, and as a result of the constant use of electricity in their homes and neighborhood, are well aware of the dangers of electricity. That this is true is positively shown in this case by the testimony of five boys, companions of minor plaintiff and all about his age, who stated that they knew defendant's tower was an electric one and that they were aware of the dangers of electricity.

At the time of the accident, minor plaintiff was twelve years of age and had lived all his life in the vicinity of the tower. The testimony shows clearly that he was a normal boy of at least average intelligence for his age. He was in the seventh grade in school.

The photographs in evidence show at least two other towers in the immediate vicinity of the one here involved and that one of these was unfenced. There can be no

question, such towers were not novel, new or strange objects likely to arouse the curiosity of a boy of minor plaintiff's age and understanding, who had lived in close contact with high tension lines from his earliest childhood. He must have been aware of their dangers.

The minor plaintiff testified that he knew what electric wires were, but that he thought when he climbed the tower that the wires might have been telephone wires. It is quite possible that he could not distinguish between telephone and electric wires. However, he cannot thus justify deliberately placing himself in close proximity, and in coming into contact with the wires, knowing there was a strong probability of great danger and serious injury. He made the risk and he tested it. Even an adult may have difficulty in recognizing the difference between telephone and electric wires, but when a person, adult or child, realizes that there is a strong likelihood of peril, he may not be heard to assert his doubts as a denial of knowledge of danger.

In *DiMarco v. Penna. R. R. Co.*, 321 Pa. 568, 183 A. 780, a minor plaintiff not quite eleven years of age was denied recovery when injured by the collapse of a bank sustaining a foot path upon which there was a permissive way for people to walk. There, we said (p. 572) : "Notice of the risk involved would have been futile in the face of such an obvious hazard. The danger arose from the existence of the cut itself, and that danger was manifest to everyone using the path. There is no duty to warn of that which is obvious." In *Devine v. Armour & Co.*, 159 Ill. App. 74, it was said in reversing a judgment in favor of a thirteen-year-old boy injured by the fall of a dilapidated building about to be razed (p. 79) : "While such a building in process of destruction may be dangerous, the danger is not hidden from a child of decedent's age, while disclosed to an adult. This lad was not a mere baby. He was at least up to the average of his age.

He knew as well as an adult that such a building in such condition and under such handling must fall."

. In the instant case, defendant's tower and the high tension lines strung thereon fifteen feet from the ground were ordinarily safe and were properly constructed for the purpose for which they were designed. Under the circumstances here presented, it seems clear that defendant could not have foreseen that a child of minor plaintiff's age and understanding would trespass into a danger so obvious and so well known to him.

I fully realize that the law must protect children of tender years from dangers which they cannot comprehend. I also realize that a landowner is not an insurer of a child's safety. Where a dangerous object is placed out of the normal reach of children, and the children are sufficiently aware of the dangers of the object, no liability can attach to the landowner.

I would reverse the judgments for plaintiffs, and enter them, *non obstante veredicto,* in favor of defendant.

Mr. Justice PATTERSON joins in this dissent.