Bruce et al., *v.* Pittsburgh Housing Authority,
Appellant.

Argued October 11, 1950. Before DREW, C. J.
STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Samuel W. Pringle,* with him *Dalzell, McFall,
Pringle & Bredin,* for appellant.

*James A. Wright,* for appellees.

OPINION BY MR. CHIEF JUSTICE DREW, November 13,
1950:

Minor plaintiff, Altha L. Bruce, and her mother,
Mildred E. Bruce, obtained verdicts totalling $6000 in

a trespass action, in the Court of Common Pleas of Allegheny County, against defendant, Housing Authority of the City of Pittsburgh, for injuries sustained by minor plaintiff in a building in defendant's Arlington Heights Housing Project. Motions for a judgment n.o.v. and new trial were refused but in the latter instance a proviso was added conditioning the refusal of a new trial on the filing by the minor plaintiff of a stipulation remitting all of the verdict in her favor above $3500. The remittitur was subsequently filed and, from the judgment in favor of plaintiff, defendant has brought this appeal.

Defendant, as a public corporation organized pursuant to the Act of May 28, 1937, P.L. 955, owns and operates a number of housing projects including the Arlington Heights Housing Project. The accident in which minor plaintiff was injured occurred in a laundry located in a building of this project, designated building Number 22. Minor plaintiff, at the time, was living in an apartment in another building but was, nevertheless, familiar with the interior of the laundry and the general location of the various pieces of laundering equipment furnished therein for the use of the tenants. The laundry is approximately 75 feet long and 25 feet wide. Seven sets of double stationary tubs, with a space of about 10 feet between them, run almost the length of the room. At one end of the tubs, and adjacent to the inner wall of the building, there is a 6-foot wide aisle, running the entire length of the building. A parallel aisle, 3 feet wide, occupies the space between the other end of the tubs and the outer wall of the building. Affixed to this outer wall and jutting out 18 inches into the 3-foot aisle are gas burning hot plates, spaced approximately 12 feet apart. Above and to the side of these hot plates, windows are set in the outer wall of the laundry at a height of about 3-½ feet above the floor of the building. Nine panes of glass, 18-½ inches

long by 12 inches high or wide, set in steel frames or separators, form each of the windows. The illumination afforded thereby is supplemented by a number of electric lights which are turned on or off at will by those using the laundry. The weekday hours of operation of the laundry are from 9:00 A.M. to 5:00 P.M. with the exception of Wednesday when it is kept open until 9:00 P.M. for the convenience of some of the tenants.

The accident in which minor plaintiff was injured occurred at approximately seven-thirty on the night of Wednesday, April 24, 1946. A short time prior thereto, minor plaintiff, who was then only nine, while skating on a new pair of roller skates in front of the apartment building occupied by her family, decided to go to another building to see a friend. As she was about to pass building Number 22, a woman called to her and asked her to go into the laundry and shut off an electric washing machine. Minor plaintiff went into the laundry to do so but instead of skating down the wider of the two aisles, she chose to follow the 3-foot aisle near the outer wall of the building. Some small fragments of glass, which had fallen to the floor when a window pane was broken in the second window from the door, were scattered in this aisle in an area a foot and a half square. Minor plaintiff had gotten as far as this second window when one of her skates struck a small piece of the glass on the floor and she lost her balance. Some jagged splinters of glass were still lodged in the frame and, as minor plaintiff reached out towards the window for support, her hand went through the space where the window pane had been and brushed against these sharp pieces of glass. A severe cut and other lacerations of the inner side of her wrist resulted, causing considerable loss of blood and the damaging of a major muscle.

Defendant denies liability primarily on the ground that it did not have notice of the broken window pane

prior to minor plaintiff's accident. One of plaintiff's witnesses testified that, when she was in the laundry at eleven o'clock on Monday morning, April 22, 1946, she noticed that the right lowest pane in the second window was broken and that some glass was on the floor in approximately the same area as described by minor plaintiff but that no other window was broken. Defendant's maintenance records show that a broken window was reported on Wednesday, April 17, 1946, and that it was replaced on Monday, April 22, 1946. Defendant's janitor in charge of the laundry testified he did not see any broken window or glass on the floor at any time during his inspections of the laundry on Tuesday or Wednesday, until he closed up the laundry after minor plaintiff's accident. Minor plaintiff testified that the broken window was the middle pane of the three panes on the right side of the window. This is contrary to the testimony of her own witness and, in the light of defendant's records and the testimony of its employe, raises serious doubt as to whether the window pane was broken a sufficient length of time to enable defendant, in the ordinary course of events to learn of it. But whether defendant had notice of the glass on the floor of the laundry or not, we are convinced that defendant could not have reasonably foreseen this accident.

It is admitted by all parties to this action that minor plaintiff, in entering into and skating through the laundry, was a trespasser. The learned court below in refusing defendant's motion for a judgment n.o.v. so found and predicated its judgment in minor plaintiff's favor on the rule of law set forth in Section 339 of the Restatement of the Law of Torts which has been cited, with approval, numerous times by this Court: *Patterson v. Palley Mfg. Co.*, 360 Pa. 259, 61 A. 2d 861. That section, so far as here relevant, is as follows: "A possessor of land is subject to liability for bodily

harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and. (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it."

Defendant concedes that it knew that the children, living in the project, often came into the laundry on skates despite the constant objections of the management to the parents and to the children themselves. However, defendant contends that it could not have reasonably foreseen that the young minor plaintiff would enter the laundry on her roller skates, choose the narrower of the two aisles in preference to the better illuminated, less cluttered and usual avenue of travel, skate down that aisle, stumble on a small piece of glass, fall, and cut her wrist on splinters of glass imbedded in the window frame. We are of the opinion that defendant is correct in this contention. This Court said in *Irwin Sav. & Tr. Co. v. Penna. R. R. Co.*, 349 Pa. 278, 37 A. 2d 432, at page 284: "But things or results which are only possible cannot be spoken of as either probable or natural. For the latter are those things or events which are likely to happen and which for that reason should be foreseen. Things which are possible may never happen, but those which are natural or probable are those which do happen, and happen with such frequency or regularity as to become a matter of definite inference. To impose such a standard of care as requires, in the ordinary affairs of life, precau-

tion on the part of individuals against all the possibilities which may occur, is establishing a degree of responsibility quite beyond any legal limitations which have yet been declared." It was possible in the instant case that children would skate down the narrow aisle along the outer wall of the laundry. But the physical obstacles to easy passage in that aisle were sufficient in number to discourage children from using it and to cause them to skate on the wider aisle paralleling it. Minor plaintiff's own testimony revealed that the children who skated through the laundry restricted their skating almost exclusively to the larger aisle or to spaces of the laundry other than the aisle in which she fell; that they avoided this latter aisle because they had to skate slowly there and usually skated in it only when they circled the laundry tubs as they played games of tag or hide and seek. Defendant's janitor in charge of the building testified that he had, on occasion, caught children skating through and about the laundry and had always sent them outside. It is only fair to assume that, at such times, the children were skating in approximately the same spaces as when seen by minor plaintiff, so that the notice defendant might have of the habits of these skaters would preclude the probability of their skating on the narrow aisle. Since it was improbable that minor plaintiff or any other child would skate down that aisle, we conclude that defendant was not remiss in failing to foresee that minor plaintiff would do so.

Minor plaintiff's right to recovery under Section 339 of the Restatement of the Law of Torts is further conditioned by subsection (b), to a showing that the artificial condition maintained on the land was one which the possessor should realize involved an unreasonable risk of death or serious bodily harm to the trespassing child. The authorities cited by the parties in this action have all been cases where an artificial

condition on the land was, in itself, dangerous to that degree. In the instant case, all the pieces of equipment and fixtures, including the windows, in the laundry were essential to the proper use of that facility and are not objected to by minor plaintiff as unreasonable or dangerous artificial conditions on the land. The artificial condition that minor plaintiff may complain of, therefore, must be that which constituted the only change in the physical appearance of the laundry, i.e., the broken pieces of glass scattered on the floor. This condition certainly did not possess the potential for serious bodily harm inherent in an uninsulated 4000 volt wire (*Bartelson v. Glen Alden Coal Co.*, 361 Pa. 519, 64 A. 2d 846), or an undermined wall (*Patterson v. Palley Mfg. Co.*, supra), or an unlocked turntable frequently used by children (*Thompson v. Reading Co.*, 343 Pa. 585, 23 A. 2d 729), or a water reservoir in a built-up residential section, enclosed by a fence through which children could easily make their way (*Altenbach v. Leh. Val. R. R. Co.*, 349 Pa. 272, 37 A. 2d 429). Minor plaintiff testified that about a half dozen pieces of glass cluttered the floor, all of which were smaller than a fifty cent coin. The piece or pieces of glass she stumbled over were not, therefore, of themselves, any more dangerous to her than would be any other small obstacle the size of a half-dollar coin in her path. Nor can we hold, as minor plaintiff insists, that the remnants of glass in the window frame, were an essential part of the artificial condition and sufficed to expose her to unreasonable risk of serious bodily harm. Those splinters of glass in no way contributed to the cause of her tripping. They no doubt aggravated the injury sustained from the fall but obviously cannot be held to have been the proximate cause of this accident: *Irwin Sav. & Tr. Co. v. Penna. R. R. Co.*, supra.

It being clear, as a matter of law, that defendant could not have foreseen that an unreasonable risk of

serious bodily harm to minor plaintiff would result from the accidental scattering of a few small particles of glass in the narrow aisle of the laundry, the lower court erred in refusing defendant's motion for a judgment n.o.v.

Judgments reversed.