G.W.E., Individually, and as Parent and Natural Guardian of A.A.E., a Minor, Appellant

v.

R.E.Z., Jr. & T.A.Z., Appellees.

Superior Court of Pennsylvania.

Argued Aug. 20, 2013.
Filed Sept. 27, 2013.

Andrew F. Fick, Reading, for appellant.

Richard D. Adamson, Kutztown, for appellee.

BEFORE: GANTMAN, ALLEN, and MUNDY, JJ.

OPINION BY ALLEN, J.:

G.W.E., ("Appellant"), individually and as parent and natural guardian of A.A.E., ("Child"), appeals from the trial court's grant of summary judgment in favor of his neighbors, R.E.Z., Jr. and T.A.Z., ("Landowners"), who constructed a pond where the Child was injured. After careful consideration, we affirm.

The trial court recited the facts of this case as follows:

On April 17, 2008, [the Child], at the time nearly two years old, was playing behind her home under the supervision of her mother[.] [Mother] became briefly preoccupied caring for another child whom she was babysitting, and when she returned her attention to [the Child], she could not locate her. Local police aided in the search and eventually found [the Child] floating face up in an artificial, decorative pond on the nearby property of [Landowners]. [The Child] survived but suffered serious injury.

[Appellant, Child's] father, filed a complaint on January 11, 2010, alleging negligence on the part of [Landowners] in that they created an artificial dangerous condition on their property without taking measures to prevent this condition from harming children who might come onto the property. On June 21, 2012, [Landowners] filed a motion for summary judgment, arguing that [Appellant] has failed to put forth evidence that could establish all of the necessary elements for his claim under [the] Restatement (Second) of Torts § 339.

Trial Court Opinion, 12/27/12, at 1–2.

The trial court granted summary judgment by order dated December 27, 2012. Appellant filed this timely appeal. Both the trial court and Appellant have complied with Pa.R.A.P.1925.

Appellant presents the following issues for our review:

A. WHETHER THE TRIAL COURT ERRED IN GRANTING [LANDOWNERS'] MOTION FOR SUMMARY JUDGMENT WHERE [APPELLANT] ADDUCED EVIDENCE TO ESTABLISH A PRIMA FACIE CAUSE OF ACTION UNDER RESTATEMENT (SECOND) OF TORTS § 339.

B. WHETHER THE TRIAL COURT ERRED IN CONCLUDING THAT [APPELLANT] FAILED TO ADDUCE SUFFICIENT EVIDENCE TO SATISFY THE FIRST ELEMENT OF A CAUSE OF ACTION UNDER RESTATEMENT (SECOND) OF TORTS § 339.

C. WHETHER THE TRIAL COURT ERRED TO THE EXTENT THAT IT CONCLUDED THAT THE DANGER OF THE ARTIFICIAL PONDS ON [LANDOWNERS'] PROPERTIES IS ONE THAT CHILDREN, INCLUDING THE MINOR IN THE INSTANT MATTER, ARE HELD TO APPRECIATE AS A MATTER OF LAW.

D. WHETHER THE TRIAL COURT ERRED TO THE EXTENT THAT IT CONCLUDED THAT THE UTILITY TO [LANDOWNERS'] IN KEEPING THE ARTIFICIAL PONDS ON THEIR PROPERTIES AND THE BURDEN OF ELIMINATING THE DANGER PRESENTED BY THE PONDS OUTWEIGHS THE RISK TO CHILDREN INVOLVED.

E. WHETHER THE TRIAL COURT ERRED, IN LIGHT OF THE *NANTY-GLO* RULE, IN GRANTING SUMMARY JUDGMENT WHERE [LANDOWNERS] RELIED EXCLUSIVELY ON THEIR DEPOSITION TESTIMONY THAT THEY WERE NOT AWARE OF ANY PRIOR INSTANCES IN WHICH CHILDREN TRESPASSED ON THEIR PROPERTY IN SUPPORT OF [LANDOWNERS'] MOTION FOR SUMMARY JUDGMENT.

Appellant's Brief at 4.

■ Regarding Appellant's challenge to the entry of summary judgment in Landowners' favor, we recognize:

Our scope of review ... [of summary judgment orders] ... is plenary. We apply the same standard as the trial

court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Chris Falcone, Inc. v. Ins. Co. of the State of Pennsylvania,* 907 A.2d 631, 635 (Pa.Super.2006) (citation omitted).

Since Appellant's first, second, and fifth issues are interrelated, we will address them together.[1] In summarizing his arguments, Appellant contends:

It is clear that, under Pennsylvania law, a possessor of land can be liable for artificial conditions causing physical harm to children trespassing on the land. *Jesko v. Turk,* 421 Pa. 434, 436–437, 219 A.2d 591, 592 (1966). Pennsylvania has adopted the Restatement (Second) of Torts § 339 with regard to child trespassers, *Jesko, supra.* During the course of discovery in this matter, [Appellant] developed sufficient evidence to satisfy all five elements of a cause of action under Restatement (Second) of Torts § 339.

Appellant's Brief at 11. We disagree.

The Restatement (Second) of Torts § 339 ("Section 339") provides:

§ 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

---

[1]. Appellant's third and fourth issues challenge the trial court's determination that Appellant failed to meet additional elements of Section 339. Appellant indicates that since "the Trial Court based its ruling on ... its [ ] conclusion that [Appellant] failed to satisfy the 'first [element of a claim under § 339] ...' ", he raises and addresses his third and fourth issues for "completeness." Appellant's Brief at 28–31. Because we agree that Appellant has failed to meet the first element of Section 339, which is fatal to Appellant's cause of action, we decline to reach Appellant's third and fourth issues.

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children.

Restatement (Second) of Torts § 339 (1965).

■ Here, the trial court determined that Appellant had not "adduced evidence, that even viewed in [the] light most favorable to [Appellant], could support an affirmative finding as to all of [the] elements [of Section 339]." Trial Court Opinion, 12/27/12, at 2. Specifically, the trial court determined that Appellant had not met the first element under Section 339 regarding the Landowners' notice that "children are likely to trespass" on their property. In finding that Appellant failed to meet the first element, the trial court explained:

[Appellant] in the instant case has not offered any evidence that [Landowners] knew of any actual prior trespass by children or that such trespass in fact ever occurred. [Landowners] admitted they usually kept a chair positioned in a gap in the arborvitae hedge along the edge of their property to discourage trespass, but there is no evidence such trespass occurred or that [Landowners'] concerns about potential trespassers were specific to children. [Appellant] also relies on [Landowners'] awareness that it is common for children to pass near the property on the sidewalk and in the alley on their way to bus stops, a gas station, other houses, etc., but there is no evidence these children ever came

onto [Landowners'] property or ever got close to the ponds. [Appellant] emphasizes that the ponds are visible, audible, and attractive to passersby. But although the legal concept under discussion is sometimes known as "attractive nuisance" doctrine, the tendency of the dangerous condition to attract children is not really at issue; the relevant analysis is knowledge of the likelihood of trespass, independent of attractiveness. *See* Restatement (Second) of Torts § 339 cmt. e. Moreover, in the context of the cases and examples cited above, wherein notice of likely trespass is predicated upon prior habitual trespass, when one considers that apparently none of the children who frequently pass by [Landowners'] property and attractive ponds has ever in fact trespassed on [Landowners'] property, the evidence actually suggests they are *unlikely* to do so. If the simple presence of children near property were sufficient to ground a claim, much of the analysis under § 339 would be meaningless.

*Id.* at 4 (emphasis in original). Based on our careful scrutiny of the record, we agree with the trial court that Appellant has failed to present evidence to support his invocation of Section 339.

Appellant criticizes the fact that "nearly all of the cases cited by the Trial Court predate the Pennsylvania Supreme Court's adoption of Restatement (Second) of Torts § 339 in 1966 in *Lesko* [*Jesko* ] *v. Turk* [421 Pa. 434], 219 A.2d 591 (Pa.1966)." Appellant's Brief at 19–20. However, the attractive nuisance doctrine which is set forth in Section 339 has "been firmly established in our jurisprudence", and many cases, while older, remain good law. *See Weimer v. Westmoreland Water Co.*, 127 Pa.Super. 201, 193 A. 665, 666 (1937). In *Weimer*, we expressed that where "there was no proof of actual notice to the defen-

dant [of children trespassing], the frequency of the presence of children over an extended period of time constituted a constructive notice" that was sufficient to establish a duty of care by a landowner vis á vis trespassing children. *Id.* at 667. Our Supreme Court "has maintained a strict insistence on keeping the application of the attractive nuisance doctrine within narrow bounds." *Powell v. Ligon,* 334 Pa. 250, 5 A.2d 373, 375 (1939) (internal citation omitted) (reversing judgment in plaintiffs' favor and granting a new trial where a minor was injured in a ditch excavated by defendants). In *Powell,* our Supreme Court cited with approval its prior decision in *Gillespie v. McGowan,* 100 Pa. 144 (Pa. 1882), and reiterated:

> It is part of a boy's nature to trespass, especially where there is tempting fruit, yet I never heard that it was the duty of the owner of a fruit tree to cut it down because a boy trespasser may possibly fall from its branches. Yet the principle contended for by the plaintiff would bring us to this absurdity if carried to its logical conclusion. Moreover, it would charge the duty of the protection of children upon every member of the community except their parents.

*Powell,* 5 A.2d at 375 *citing Gillespie v. McGowan,* 100 Pa. 144, (Pa.1882), 1882 WL 13397 at 6.

Moreover, our Supreme Court has explained:

> A pond, artificial or otherwise, does not differ from lakes and streams found everywhere, all of which are attractive to children and present common dangers. The owner of premises containing something attractive to children is not always liable in damages because of injuries to one yielding to the attraction. It depends upon the character of the thing in question, and a pond of water, guarded, from the roadway . . ., cannot properly

be placed in the same category with dangerous machines, electrical appliances, and similar things.

*Ansell v. City of Philadelphia,* 276 Pa. 370, 120 A. 277, 278 (1923) (affirming a nonsuit in a landowner's favor). Our Supreme Court has further noted "that [the fact that an injury by a condition on landowner's property] is possible is proven by the fact that it did happen, but liability is never imposed on the basis of mere possibilities." *Verrichia, et al. v. Society Di M.S. Del Lazio,* 366 Pa. 629, 79 A.2d 237, 239 (1951) (affirming a nonsuit in landowner's favor indicating that "[p]laintiffs proved nothing more than that an odd and unfortunate accident occurred").

In this case, the Landowners refuted any actual or constructive notice of children trespassing on their property. N.T., Deposition of R.E.Z., Jr., 8/25/10, at 40; N.T., Deposition of T.A.Z., 8/25/10, at 29. Appellant likewise denied he had "ever see[n] any kids using [Landowners'] [land] in what appeared to be a shortcut to get from Point A to Point B[.]" N.T., Appellant's Deposition, 11/11/10, at 9. The Child's mother ("Mother") testified, "I don't recall ever seeing anyone use" Landowners' "property as a shortcut." N.T., Mother's Deposition, 11/11/10, at 24. Mother further testified that she never saw her daughter "physically present" on the Landowners' "property." *Id.* at 24. Given the parties' deposition testimony, the record does not present a material question that Landowners' property, as "the place where the condition exists[,] is one upon which the possessor knows or has reason to know that children are likely to trespass." *See* Restatement (Second) of Torts § 339(a) (1965); *Weimer,* 193 A. at 666.

Appellant further asserts that the trial court's rationale violates the *Nanty–Glo* rule. Specifically, Appellant maintains:

In the present case, [Landowners] relied upon their own deposition testimony that they were not aware of any prior instances in which children trespassed on [their] properties in support of their contention that [Appellant] was unable to prove the first element of a claim under Restatement (Second) of Torts § 339 and their Motion for Summary Judgment. This is legally insufficient to support summary judgment under *Nanty–Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). *See also, Wright v. Eastman,* 2013 Pa.Super. 11 (Pa.Super.2013); *Rosenberry v. Evans,* 2012 Pa.Super. 91, 48 A.3d 1255 (Pa.Super.2012).

Appellant's Brief at 31.

The trial court repudiated Appellant's argument by explaining:

> Under the Restatement (Second) of Torts § 339 analysis described in this Court's earlier opinion, "all five requirements of section 339 must be satisfied if a possessor of land is to be held liable." *Jesko v. Turk* [421 Pa. 434], 219 A.2d 591, 592 (Pa.1966) (finding against the plaintiffs because they failed to satisfy one of the elements). The critical element in this case is the first, regarding whether [Landowners] knew or had reason to know that children were likely to trespass. [ ] [T]hat element required [Appellant] to adduce evidence that [Landowners] knew of prior trespass by children, and perhaps particularly young children. [Appellant] failed to do so, regardless of [Landowners'] testimony that they were unaware of such prior trespass. In other words, this Court did not rely on [Landowners'] oral testimony, but rather on [Appellant's] failure to put forward evidence that could support a jury verdict in their favor.

Trial Court Opinion, 3/19/13, at 2–3. The record supports the trial court's determination that the *Nanty–Glo* rule was not violated in the grant of summary judgment in favor of Landowners. While Appellant claims that the Landowners were the only source disavowing the likelihood, and lack of history of children, including Appellant's Child, trespassing on the Landowners' property, the sworn testimony from the Child's parents, including Appellant, substantiates the Landowners' testimony.

Moreover, despite objecting to the Landowners' request for admissions, Appellant admitted that he was not aware "of any ordinance or statute that would require the erection of barriers, gates, fences, nets, or other protections around a pond like the pond at issue." *See* Appellant's Answers to [Landowners'] Request for Admissions, 4/9/11, at 1. Appellant further admitted that he was "unaware of any ordinance or statute that would require the [Landowners] to erect and maintain barriers, gates, and fences between [Landowners'] property and adjacent properties." *Id.* at 2.

Appellant testified that the Child did not have a habit of wandering off the property. N.T., Appellant's Deposition, 11/11/10, at 11. Appellant denied hearing "anything from any source whatsoever that other neighbors were saying that [the Child] had previously wandered off the property[.]" *Id.* at 12. Likewise, Mother denied that the Child had ever "wandered off" Appellant's property. N.T., Mother's Deposition, 11/11/10, at 47. Further evidencing that the Child was not inclined to trespass on the Landowners' property was Mother's testimony that when she searched for the Child, she did not enter the Landowners' property, despite "running ... to the places that [the minor] goes." *Id.* at 47–52. Appellant's expert noted that when Mother first noticed the Child's absence:

> [Mother] **first** ran towards the garage, a place [that Child] would like to go when

she and her parents would play hide and seek. She **then** looked down Maple Avenue (the alley) which is at **the rear** of the property ... [Mother] then ran to the rear of their building to a little gap that [minor] would like to go to.... [After dialing 911], [s]he then proceeded to search near the alleyway.

Appellant's Expert Report of Robert E. Ogoreuc, M.Ed., EMT–B, 2/27/12, at unnumbered page 4 (emphasis supplied).

Based on the foregoing, the record establishes, by more than the Landowners' denials, that children, including Appellant's Child, were not regular, or even infrequent, trespassers on Landowners' property. Thus the Landowners did not have knowledge or reason to know of such trespass to satisfy the first element of Section 339. *See Whigham v. Pyle*, 224 Pa.Super. 6, 302 A.2d 498, 501 (1973) (affirming the trial court's grant of summary judgment in landowner's favor where "there was no evidence of even an occasional past childish frolic into the area in question, the requirements of Section 339 of the Restatement have not been met").

Order affirmed.

Judge MUNDY files a Dissenting Opinion.

### DISSENTING OPINION BY MUNDY, J.:

I respectfully dissent from the learned Majority's decision to affirm the trial court's order in this case. Based on my review of the record, I conclude that Appellant met the required threshold under section 339(a) of the Restatement.

As noted by the Majority, Appellant invokes section 339 of the Restatement (Second) of Torts, which states as follows.

### § 339 Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts § 339. The trial court resolved Appellees' motion for summary judgment on the basis that Appellants had not produced evidence in support of section 339(a).

The Majority concludes that summary judgment was properly entered because "the record establishes ... that children ... were not regular, or even infrequent, trespassers on Landowners' property. Thus the Landowners did not have knowledge or reason to know of such trespass to satisfy the first element of [s]ection 339." Majority Opinion at 49. It is true that evidence of prior trespasses by children could certainly be relevant to show that "possessor knows or has reason to know that children are likely to trespass." Restatement (Second) of Torts § 339(a).

However, I respectfully disagree with the Majority's conclusion that Appellant was **required** as a matter of law, to prove that children have trespassed in the past, in order to raise an issue of material fact under section 339(a). In my view, the plain text of the restatement states that Appellant need only provide evidence that "children are **likely to** trespass" on the property in question. Restatement (Second) of Torts § 339(a) (emphasis added).

Our Supreme Court first adopted section 339(a) in *Bartleson v. Glen Alden Coal Co.*, 361 Pa. 519, 64 A.2d 846 (1949). In *Bartleson*, the plaintiff was playing near an electric tower with friends, when he climbed the tower, came into contact with electric current at about 15 feet off the ground and sustained serious injuries as a result. *Id.* at 523–524, 64 A.2d 846. The plaintiff sought liability under section 339 and prevailed in the trial court.[1] The plaintiff presented no evidence to the jury that children had previously trespassed on the land containing the tower. Our Supreme Court affirmed the judgment in plaintiff's favor, concluding specifically that section 339(a) had been satisfied by the plaintiff's evidence of children frequently being around the area near the tower.

This case is governed squarely by these principles. The defendant knew or should have known that children were likely to trespass upon its land. For years without objective disapproval children had played games within 20 to 400 feet of the tower; for years adults and children alike had used pathways carrying them past and within a few feet of the tower. In view of the overwhelming character of the testimony the jury could reasonably infer that the defendant coal company, through its agents, actually knew that children played in the vicinity of its tower.

. . .

The appellant argues that there was not present a necessary element of allurement[.] . . . This contention has been repudiated explicitly by this court. **The artificial condition causing the injury need not induce the trespass; it is sufficient that trespassing is likely to occur where a dangerous condition exists.**

. . .

Having failed to exercise ordinary care in securing the gate, it was foreseeable **that children would be attracted** to the tower innocent of its dangerous nature or under the misapprehension that the power was turned off.

*Id.* at 525–526, 64 A.2d 846 (internal quotation marks and citations omitted; emphases added).[2]

1.  At that time, section 339(a) was virtually the same as it is today in the restatement (second). *See Bartleson, supra* at 525, 64 A.2d 846 (noting that section 339(a) required a showing that "the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass[ ]").

2.  I also emphasize that comment 3 in the reporter's notes of section 339 highlights this distinction between "whether children are trespassing, or are likely to trespass." *See* Restatement (Second) of Torts § 339, cmt. 3. Additionally, illustration 3 under the com-

ment for section 339(a) gives the following scenario.

3.  The A Manufacturing Company maintains a high-tension electric wire from its powerhouse to its factory. This wire is permitted to become uninsulated and to sag from the poles so that it comes into close proximity to magnolia trees, which are close to the highway at a point where there is no fence. B, a young child, climbs the tree to pick the blossoms and comes into contact with the wire which, in his eagerness to get the flowers, he does not observe. The A Company is liable to B.

In the case *sub judice*, Appellant provided evidence that when read in the light most favorable to him, created a genuine issue of material fact for the jury regarding section 339(a). R.E.Z., Jr. acknowledged the following factors about his property and the ponds.

Q: This pond, the first pond, is visible from the alley at the rear of your property, correct?

A: Yeah.

. . .

Q: . . . Do you know if the waterfall or any of the sounds associated with that first pond could be heard off of your property?

A: Yes.

Q: Okay. How do you know this?

A: It is just you can hear water run if the traffic ain't running.

. . .

Q: . . . Do you know if you could hear it from the neighboring property?

A: Yes.

. . .

Q: Have you ever been on the property where [Appellants] resided and heard your pond running?

A: Yes.

. . .

Q: There is a lot of residences in the vicinity of where your home is, correct?

A: Yes.

Q: I mean, it is right there almost in the middle of Robesonia?

A: Correct.

Q: And there is a lot of kids that live in the neighborhood generally?

A: It all depends. What do you mean by a lot of kids in the neighborhood?

Q: . . . There are children that live in the residences around your home of varying ages, correct?

A: Correct.

Q: All right. And I mean, the children come down the alley walking, on bicycles, to get to the Sunoco gas station and to get to their friends' houses, correct?

A: Correct.

Q: You have seen children walking behind your house in the alleyway at times?

A: Correct.

Q: Along the same lines, children of varying ages and adults also walk along the sidewalk there in front of your home because there are a lot of businesses in Robesonia on the main drag there.

A: Correct.

Q: Now, as far as the immediately neighboring properties, you were aware that [A.A.E.] resided in that property right next door to the west?

A: Correct.

Q: You were aware of that before this incident ever happened, correct?

A: Correct.

. . .

Q: You had seen [A.A.E.] playing in the backyard with her father or mother or a playmate at times after they had moved in next door to your property?

A: Yes.

*Id.* at cmt. (e), illustration 3. This illustration does not contain any knowledge of a prior trespass.

Q: Were there any other children that lived on that property at 131 West Penn Avenue?

A: Yes.

Q: Okay. What other children had you seen on that property?

A: There was people in and out of there a couple of times and had some children.

. . .

Q: There is a row of arborvitae that goes down some length of the western edge of your property, correct?

A: Correct.

. . .

Q: All right. We see . . . there is sort of a space in that row of arborvitae. What is the story behind that?

A: There was a tree there at one time we cut down.

Q: When you say a tree, was that an arborvitae or some other type of tree?

A: It was a large maple tree.

Q: Do you know . . . when the maple was removed?

A: No.

Q: We have always used [Appellees' son] as a marker. Was [he] already born? Do you have any recollection how old he might have been?

A: Yes. He might have been five or six.

Q: Okay. So that's probably something that has been gone for over 15 years?

A: Yes.

Q: In these pictures, there is a white wooden chair with, it looks like, a bird feeder or a birdhouse on it, correct?

A: Um-hum. Correct.

Q: Is that your chair and your bird feeder?

A: Yes.

Q: And you put the chair there to keep people from the neighboring property from walking onto your property correct?

A: Yes.

Q: All right. How long had you had in place that sort of process of having the chair there? . . .

A: That is years.

. . .

Q: This pond would have been visible from the alleyway and the neighboring properties, correct?

A: Meaning?

Q: Someone on the alleyway or someone in the neighboring properties would have been able to see that pond depending upon the angle?

A: Yes. But only from one side neighbor.

Deposition of R.E.Z., Jr., 8/25/10, at 23, 32, 33, 34, 35–36, 47, 48–49, 76; *accord* Deposition of T.A.Z., 8/25/10, at 17–21, 27–29 In addition, both Mother and Chief Heilman testified that on the day of the incident, there was an "open gap" in the arborvitaes, signaling that Appellees' chair was not there that day. *See* Deposition of Mother, 11/11/10, at 54; Deposition of Chief Wade Heilman, 6/8/11, at 12–13.

In my view, looking at the above evidence in the light most favorable to Appellant, there is a genuine issue of material fact as to whether Appellees "kn[ew] or ha[d] reason to know that children [we]re likely to trespass" on this part of their property. Restatement (Second) of Torts § 339(a). It establishes that Appellees knew children passed by their property via the alleyway and the sidewalk. Appellees also knew that several children were frequently present at the neighboring property on the other side of the arborvitae. Appellees also acknowledged that the pond

was visible and audible from the alleyway and from where A.A.E. resided. Finally, Appellees acknowledged that they put a chair in an open gap in the arborvitae for the purpose of keeping people out of their property. The evidence further shows that the chair was not present on the day of the incident. Based on these considerations, I conclude Appellant has raised a genuine issue of material fact as to whether Appellees, at a minimum, "ha[d] reason to know that children [we]re likely to trespass" on this part of their "property." *Id.* As stated above, I do not believe Appellant was required under section 339(a) to prove that children have trespassed in the past.[3]

Based on the foregoing, I conclude that the trial court abused its discretion when it granted Appellees' motion for summary judgment by requiring Appellants to prove prior incidents of trespass. As Appellant points out, Appellees' motion for summary judgment only argued that Appellants failed to satisfy section 339(a). *See* Appellees' Motion for Summary Judgment, 6/21/12, at ¶ 34. Because Appellees' did not argue in their motion that Appellant had not satisfied any other subsections of section 339, I would reverse the order granting Appellees' motion for summary judgment and remand for further proceedings. I respectfully dissent.

---

**3.** Several of our sister states have found section 339(a) of the Restatement satisfied without proof of prior trespass. *See Yeske v. Avon Old Farms Sch., Inc.,* 1 Conn.App. 195, 470 A.2d 705, 710 (1984); *Gregory v. Johnson,* 249 Ga. 151, 289 S.E.2d 232, 235 (1982); *Mason v. City of Mt. Sterling,* 122 S.W.3d 500, 507 (Ky.2003); *Anderson v. Cahill,* 485 S.W.2d 76, 78 (Mo.1972); *Hill v. Nat'l Grid,* 11 A.3d 110, 115 (R.I.2011); *Hofer v. Meyer,* 295 N.W.2d 333, 336 (S.D.1980).

The Majority cites to *Whigham v. Pyle,* 224 Pa.Super. 6, 302 A.2d 498 (1973) in support of its conclusion. *See* Majority Opinion at 49. However, in my view, *Whigham* is distinguishable as this case does not involve a 45.5 acre parcel of land. In addition, to the extent *Whigham* could stand for the proposition that proof of prior trespass is required under section 339(a), our Supreme Court's decision in *Bartleson* supersedes it. *See Bartleson, supra.*